THE ST. LOUIS, OAK HILL & CARONDELET RAILWAY COMPANY, *Appellant*, v. FOWLER *et al.;* ROTHAN *et al., Appellants.*

#### Division One, January 23, 1893.

1. **Condemnation Proceeding**: RAILROAD: PLEADING. A petition, in a suit to condemn land for a railroad right of way, may refer to a. plat filed with it for an accurate description of the property sought to be taken; if it is well described on the plat that is sufficient.

2. **Practice**: CHANGE OF VENUE: CONDEMNATION PROCEEDING. The provisions of the code relating to a change of venue because of the prejudice of the inhabitants of the county are, by the constitution and the eminent domain act made applicable to proceedings to condemn property for public use.

3. ——: ——: NOTICE. Where one defendant is made a party as. trustee for another, a notice of application for change of venue, addressed to him without adding the word "trustee," is sufficient.

4. ——: ——: ——. Where a notice of application for a change. of venue states that knowledge of the cause therefor first came to. the party on the day the notice is given and the application is made to the court on the third day thereafter, it is within seasonable time,. though made more than two years after suit was begun.

The St. Louis, Oak Hill & C. Ry. Co. v. Fowler.

5. ——: ——: CORPORATION. Where an application for change of venue on the ground of local prejudice is made by a corporation, the affidavit in support of it may be made by its secretary.

6. ——: ——. Where an application for a change of venue is sufficient in form and substance, the trial court errs in overruling it, and the judgment will be reversed therefor.

7. Railroad: CONDEMNATION PROCEEDING: DAMAGES. The landowner in a condemnation proceeding for a railroad right of way, is entitled to damages for injuries to the whole tract, and not simply to the parts touched by the road.

8. ——: ——: ——: EVIDENCE. A witness testifying as to the injury inflicted on a tract of land by the railroad running through it may give his opinion as to the extent to which the land next to the road would be injured, and may illustrate the same by reference to a map in evidence.

9. ——: ——: ——: ——. It is improper to inquire of such witness on cross-examination whether the residue of the tract was worth as much per acre after the right of way was taken out as it was before, since such question permits the witness to set off against the damages any benefit the land might, in common with other lands in the vicinity, receive from the construction of the railroad.

10. ——: ——: REASSESSMENT OF DAMAGES. Where the company pays to the landowner or into court for him the amount of the commissioner's award, any reassessment of damages must be on the basis of the value of the land at the date of the commissioner's report.

11. ——: ——: WITHDRAWAL OF MONEY BY LANDOWNER. The landowner has the right to withdraw and use, pending the proceeding for reassessment of damages, the amount of the award of the commissioners paid into court.

12. ——: ——: INTEREST. Such reassessment should not include interest on the sum so paid into court.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *H. G. Herbel* for appellant.

(1) The court erred in overruling plaintiff's application for a change of venue. *Dowling v. Allen,* 88

Mo. 293; *Mix v. Kepner*, 81 Mo. 93; *Corpenny v. Sedalia*, 57 Mo. 88; Constitution of Missouri, art. 12, sec. 4; Revised Statutes, 1879, sec. 896; *Railroad v. Randolph*, 103 Mo. 469; *Railroad v. Story*, 96 Mo. 621; Revised Statutes, 1879, sec. 3729; Revised Statutes, 1879, sec. 3461; *Railroad v. Calkins*, 90 Mo. 541. (2) The court erred in admitting incompetent and illegal evidence offered by defendant. *Railroad v. Baker*, 102 Mo. 559; *Railroad v. Calkins*, 90 Mo. 546; *Railroad v. Waldo*, 70 Mo. 630; *Railroad v. Ridge*, 57 Mo. 601; *Balfour v. Railroad*, 62 Miss. 508; *Page v. Railroad*, 70 Ill. 327. (3) The court erred in excluding competent and legal evidence offered by plaintiff. (4) The court erred in refusing legal instructions asked by plaintiff. See cases cited under point 2, *supra*. (5) The court erred in giving illegal instructions at the instance of defendants. *Railroad v. Vivian*, 33 Mo. App. 587; *Shattuck v. Railroad*, 23 N. H. 269; *Hilton v. City*, 99 Mo. 200; *Wilcox v. Railroad*, 35 Minn. 442, and cases cited under point 2, *supra*. (6) The court erred in giving instruction of its own motion. (7) The verdict is grossly excessive, and evidently the result of bias, passion and prejudice on the part of the jury. *Bene v. Jeantet*, 129 U. S. 683; *Peterson v. Case*, 18 American & English Railroad Cases, 581.

*David Goldsmith* for defendants as appellants.

(1) The plaintiff's application for a change of venue was properly refused, because the statute providing for changes of venue in civil actions is not applicable to proceedings of eminent domain. *Railroad v. Railroad*, 65 Cal. 394; Revised Statutes, 1889, sec. 3461; *Koppikus v. Commissioners*, 16 Cal. 254; *Webster v. Commissioners*, 63 Me. 27; *Valentine v. Boston*, 20 Pick. 201; *Gates v. Bliss*, 43 Vt. 299;

*People v. Hamilton*, 39 N. Y. 109. (2) Said application was properly refused, owing to the lack of sufficient diligence on the part of the plaintiff. *State to use v. Matlock*, 82 Mo. 455; *Wolf v. Ward*, 104 Mo. 127. (3) Said application was properly refused, because no notice of it was given to Mr. Meyer Goldsmith, as trustee for Mrs. Rosa Goldsmith. Revised Statutes, 1889, sec. 2262; *Johnson v. Moffett*, 19 Mo. App. 159. (4) Said application was properly refused, because the verification of it was insufficient. *In Matter of Whitson's Estate*, 89 Mo. 58; *Squires v. Chillicothe*, 89 Mo. 232; *Norvel v. Porter*, 62 Mo. 310; *Huthsing v. Maus*, 36 Mo. 101; *Corpenny v. Sedalia*, 57 Mo. 91; Cook on Stockholders, sec. 17, p. 928; *Newlands v. Ass'n*, 54 Law Jour. Q. B. Div. p. 431; *Barnett v. Co.*, 18 Q. B. Div. p. 817. (5) There was no error in the rulings on the admission and exclusion of evidence, of which the plaintiff assigns error. *Adams v. Railroad*, 57 Vt. 249; *Co. v. Ferrell*, 17 Pick. 58; *Upton v. Railroad*, 8 Cush. 600; *Roberts v. Commissioners*, 21 Kan. 247; *Railroad v. Meyer*, 39 Miss. 374; *Railroad v. Ball*, 5 Ohio St. 568; *Washburn v. Railroad*, 59 Wis. 364; Lewis on Eminent Domain, p. 595, note 6. (6) The refusal of the instructions, numbered two and three respectively, and asked by the plaintiff, was proper. *State ex rel. v. St. Louis*, 62 Mo. 246; see also the authorities under point 5. (7) The complaint made of the fourth instruction given for the defendants, namely, that it was misleading, "because it prohibits the assessment of peculiar benefits against defendants' lands, if the same benefits are shared by other lands through which the road does not run," is not well founded. This instruction could not have been misleading under the evidence, and it was, moreover, correct in the abstract. *Railroad v. Waldron*, 11 Minn. 515; *Adams v. Railroad*, 57 Vt. p.

250; *Combs v. Smith*, 78 Mo. 40. (8) The charge of interest from the date of the commissioners' report was proper, if the theory of the trial court and the plaintiff, that the damages ought to be assessed as of that date, is correct. *Railroad v. Brown*, 13 Neb. 317; *Warren v. Railroad*, 21 Minn. 424; *Railroad v. Burson*, 61 Pa. St. 369; *Reed v. Railroad*, 105 Mass. 303; Lewis on Eminent Domain, sec. 499; *Daniels v. Railroad*, 41 Iowa, 52; *Newgrass v. Railroad*, 15 S. W. Rep. 188; *Philips v. Pease*, 39 Cal. 582. (9) The description of the property sought to be taken by the plaintiff was insufficient, and, therefore, commissioners ought not to have been appointed under the present petition. Lewis on Eminent Domain, sec. 350, 352, p. 456; Mills on Eminent Domain, sec. 115, p. 271; sec. 117, p. 274; *Brown v. Railroad*, 86 Ala. 209; *Railroad v. Commissioners*, 65 Me. 293; *Smith v. Welden*, 73 Ind. 454; *Railroad v. Smith*, 109 Ind. 488; *Jones v. Marion Co.*, 4 Ore. 46; *Ellis v. Railroad*, 51 Mo. 200; *Railroad v. Campbell*, 62 Mo. 585; *Cory v. Railroad*, 100 Mo. 290; *Cunningham v. Railroad*, 61 Mo. 33; *St. Louis v. Gleason*, 89 Mo. 67; *Anderson v. Pemberton*, 89 Mo. 61. (10) The damages of the defendants should have been assessed upon the basis of the value of the property in question at the date of trial, and not at the date of the filing of the report of the commissioners. *Railroad v. Town-Site Co.*, 103 Mo. 451; *Arnold v. Bridge Co.*, 1 Duv. (Ky.) 372; *Railroad v. Small*, 87 Ga. 355; *County of Blue Earth v. Railroad*, 28 Minn. 503; *Morin v. Railroad*, 30 Minn. 100; *Railroad v. Ruby*, 15 S. W. Rep. 1040.

BLACK, P. J.—Plaintiff commenced this suit on the eighth of October, 1886, in the circuit court of St. Louis to condemn a right of way over twenty or more pacels of land owned by different persons. Isaac

Rothan, Rosa Goldsmith and Meyer Goldsmith, her trustee, owned one parcel containing some twenty-four acres. .Having been duly served with summons, they appeared and objected to the appointment of commissioners on these grounds: *First*, because the damages should be assessed by a jury; *second*, because the petition did not describe the property to be taken. These objections were overruled, and they excepted. Commissioners were appointed, who made report on the twenty-second of November, 1886. On that day plaintiff paid into court $10,025.80 "to cover the awards of said commissioners." The report of the commissioners is not preserved in this record, so that we do not know the amount awarded to these defendants, for it is evident that the above amount is the aggregate of the damages allowed to the various property owners.

On the second and eleventh days of December, 1886, these defendants filed exceptions to the commissioners' report. The exceptions are not in the record before us. On the twenty-seventh of the same month the court sustained the exceptions, set aside the report and ordered a new appraisement. The record does not show what, if anything, was done between this date and June, 1888, but at the last named date the death of Rosa Goldsmith was suggested, and her heirs and devisees were made parties. This was done on their motion and after the service of *scire facias* upon plaintiff, issued at their request.

On the fifth of November, 1888, at the October term for that year, the plaintiff applied for a change of venue, stating in the petition therefor that the inhabitants of the city of St. Louis were prejudiced against it, and that knowledge of the existence of such prejudice first came to it on the second of November, 1888, and since the adjournment of the last regular term of

court. This report was verified by the affidavit of George C. Smith, secretary of the plaintiff corporation, who says the matters and things set forth in the petition are true, and that the affiant and the plaintiff have just cause to believe the plaintiff cannot have a fair trial in the city of St. Louis on account of the cause alleged in the petition. Notice of an intention to make this application was served on the attorney for all of these defendants on the second of November, three days before the application was filed in court. In this notice defendant, Meyer Goldsmith, is not described as trustee for Rosa Goldsmith, but simply as Meyer Goldsmith. The other defendants are all properly named. A jury trial was then had, resulting in a verdict for defendants for $11,541.20, and from the judgment thereon both sides appealed.

1. The first question to be considered is the defendants' objection that the petition fails to describe the land sought to be appropriated. The petition states, among other things, that the plaintiff "has duly surveyed and located and is proceeding to construct" a line of road beginning, etc.; that it is necessary to acquire the right of way through various parcels, and among others "a strip of ground or right of way sixty six feet wide across a certain tract of land," describing the defendant's twenty-four acres by its boundaries, "the area of right of way required being one and forty-two hundredths acres more or less." * * * "And for a more accurate and perfect description of said several parcels or tracts of land above described, and the right of way over them sought to be acquired, reference is hereby made to the map or plat of said lands above referred to, and herewith filed and made a part hereof, and upon said plat or map said above described rights of way are colored blue."

The entire tract is bounded in part by streets. The

plat shows these streets and the other boundaries, that the railroad enters at the north side and passes on in a southeast direction by a slight curve for a part of the way and out at the east side, thus cutting off three or four acres in the northeast corner. The line of the road is shown on the plat by the strip colored blue, and there is a center line through this strip with figures indicating thirty-three feet on each side of the center line. The following figures and letters also appear upon the face of the map, namely: "55x31.6, 2°36' C," thus designating the degree of the curve with the right of way as we understand. The plat professes on its face to be drawn to a scale of two hundred feet to the inch. The streets on, and the lines of the adjoining property, are all disclosed by lines. There are no figures or field notes on the plat to indicate where the road enters or leaves the land. To do this, resort must be had to the scale, which, as we have said, is stated on the plat itself.

According to the statute the petition should set forth "a description of the real estate or other property which the company seeks to acquire." There is no doubt but the petition may, as does this one, refer to a plat filed therewith for an accurate description of the property sought to be taken, and, if well described on the plat, that is sufficient. The plat in this case appears to have been prepared with care, and since it specifies the scale on which it is made, it cannot be difficult for a surveyor to locate the strip with certainty; and, that being so, the description is sufficient. Descriptions in many respects like this have been held sufficient. *Railroad v. Kellogg*, 54 Mo. 334; *Railroad v. Story*, 96 Mo. 611; *Cory v. Railroad*, 100 Mo. 284; *Railroad v. Town-Site Co.*, 103 Mo. 452: Mills on Eminent Domain, sec. 115.

VOL. 113—30

2. The plaintiff on its appeal assigns as error the action of the trial court in refusing a change of venue. The defendants seek to support this ruling on several grounds, and the first is that the statute providing for change of venue in civil action does not apply to eminent domain proceedings. Of the cases cited by the defendants that of *Railroad v. Railroad*, 65 Cal. 394 is most in point. There the proceedings to condemn were commenced in the county where the property was situated, and it was contended that another county was the residence of the defendant corporation, and therefore the place where the trial should be had. The court held that the law did not define the place of residence of a corporation, and that the proceedings were properly brought and were to be tried in the county where the land was situated. That case, it is plain to be seen, has no direct bearing on this one.

The code of civil procedure declares that there shall be but one form of action for the enforcement or protection of private rights and redress of private wrongs, which shall be denominated "a civil action;" another section provides that "a change of venue may be awarded in any civil suit" for the specified causes. It has also been constantly ruled from an early day that appeals may be taken in these eminent domain proceedings, and this because the code allows an appeal to every person aggrieved by any "final judgment or decision in any civil cause." *Railroad v. Lackland*, 25 Mo. 515; *Railroad v. Railroad*, 94 Mo. 540.

Though these provisions of the code are broad and comprehensive, still it is clear that they do not, standing alone, give either party a right to a jury trial in a special proceeding like this; and hence these general provisions in the code would not, by themselves, give a party a right to a change of venue because of the prejudice of the inhabitants. The con-

stitution, however, of 1875 guarantees to either party to a proceeding like this to condemn land for public use the right to a jury to assess the damages, and this means a common-law jury of twelve men. Either party has a right to a jury without any other showing than simply a demand therefor. This we have often held. As was said in *Railroad v. Story*, 96 Mo. 611: "The jury there meant is the historical jury of twelve men, with all of its incidents;" and a right to a change of venue because of the prejudice of the inhabitants is one of these incidents given by the code.

Besides all this the statute relating to the appropriation and valuation of lands to public use requires the proceedings to be commenced by summons. Commissioners are appointed in the first instance; but, as has been said, either party is entitled to a jury upon demand therefor. The court may award a new appraisement, and "such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, *as in ordinary cases of inquiry of damages.*" Revised Statutes, 1879, sec. 896. This statute means that the jury is to be organized and the trial conducted as in other jury cases, and a change of venue because of the prejudice of the people is an incident to such a trial. The fact that these proceedings are of a summary character up to the demand for a jury furnishes no reason why the jury should not be an impartial one and free from any prejudice prevailing in the particular locality. We conclude that these provisions of the code relating to a change of venue because of prejudice of the people are made applicable in a proceeding to condemn by force of the constitution and the eminent domain act.

The objection that the notice of the intended application for a change of venue was no notice to Meyer Goldsmith in his capacity of trustee for Rosa

Goldsmith is purely technical and without any merit. The notice gives the court in which the cause is pending the name of the plaintiff and the names of all the defendants, and is addressed to David Goldsmith, "attorney for the above named defendants in the above cause." The mere fact that Meyer Goldsmith is described by his name without the addition of the words "trustee for Rosa Goldsmith" is wholly immaterial. He was made a party in his trustee capacity, and could not have been misled or in any way prejudiced by the omission.

The further point that the application fails to show due diligence is equally unfounded. It states that knowledge of the existence of the prejudice first came to the plaintiff on the second of November, 1888, and on that day notice of the intended application was given, and this was before the day on which the cause was set for trial. The application was made to the court on the fifth of the same month. The diligence required by the statute is diligence in making the application after knowledge or information of the existence of the cause therefor. Surely there was, according to the affidavit, no lack of diligence in that respect in this instance.

Finally, as to this branch of the case, it is urged that the application should have been supported by the affidavit of the attorney for the plaintiff, or by its president or other chief officer, and that an affidavit by the secretary is insufficient. It has been several times held that the affidavit must be made by the party himself and not by his attorney or agent. *Huthsing v. Maus*, 36 Mo. 101; *Norvell v. Porter*, 62 Mo. 309; see also 89 Mo. 58; 89 Mo. 232. But these cases cannot rule one where the party making the application is a corporation; for in such case the application must be made by an officer or agent from necessity. In *Corpenny*

*v. Sedalia*, 57 Mo. 88, objection was made because the application was verified by the attorney for the defendant, instead of the mayor, and it was held there was no force in the objection. The fact that a secretary has but few implied powers to represent the corporation in its business transactions is unimportant. His functions may be clerical only, and yet he may be the only officer who possesses the information necessary to enable one to make the affidavit. In our opinion the application for a change of venue by a corporation may be verified by any officer or agent of the corporation. The application being sufficient in form and substance, the trial court erred in overruling it. *Mix v. Kepner*, 81 Mo. 93; *Dowling v. Allen*, 88 Mo. 293. And for this error the judgment must be reversed.

3. It is next insisted that the court erred in admitting evidence produced by the defendant. The entire tract of twenty-four acres is bound north and east by streets and south by the Manchester road. The railroad cuts off three or four acres in the northeast corner, leaving the balance south of the railroad and north of the Manchester road. A witness called by the defendant stated that the whole tract was worth from $1,800 to $2,000 per acre and that the three or four acre piece was damaged fifty per cent. of the above stated value. When speaking of the other part he was asked this question: "You stated the part of it next to the railroad which you pointed out would be affected. Now I want to know how it would be affected; would it be damaged or benefited, that is, the part next to the road?" To which he answered, over the objection of the plaintiff: "I think it damaged about twenty-five per cent." The objection interposed to this question was and is that it allowed the defendants to make imaginary sub-divisions of the

tract, and then show that the portions set off by these imaginary lines were damaged.

There is no merit whatever in the objection. It is very true, as we have held, that the damages to be allowed by the jury are not confined to the small parcels or government subdivisions over which the railroad may pass. The land owner is entitled to the damages for the injury to his whole tract, not simply to the parcels touched by the road. But in order to enable the jury to reach this result, it is perfectly competent and proper to show what parcels are injured and to what extent they are injured. The witness being of the opinion that the land next to the railroad would be injured, he had the right to express this opinion, and to point out on the map in evidence to what distance from the railroad it would be injured. From all these details the jurors can make up their verdict as to the damage to the whole. Such evidence is far more satisfactory than that drawn from the witness by one general question which undertakes to cover the whole issue to be decided by the jury. There was no error in overruling this objection and the many other like objections made by the plaintiff during the progress of the trial.

4. The plaintiff, on the cross-examination of defendants' witness, asked this question: "What is the remainder of the Rothan-Goldsmith tract left after the right of way was taken out of it by the railroad company worth; was it worth as much per acre after the right of way was taken out as it was before?" Objection being made, the trial judge said: "As I understood the question, it would allow the witness to take into consideration the benefits common to other land in the neighborhood, which part of the land might derive, and set such benefits off against injuries to other portions of the land. If that is the meaning of

your question, I will sustain the objection, and inter-
pret your meaning to be that." No change being
made in the form of the question, the court sustained
the objection, and the plaintiff excepted.

The law is well settled in this state that benefits
arising from the proposed improvement, which are
common to other property in the vicinity, are not to be
considered in reduction of damages. The benefits and
only benefits which can be considered in reduction of
damages are those which are special and peculiar to
the particular property, a part of which is taken. The
plaintiff, in the cross-examination of a prior witness
produced by the defendant, drew out evidence to the
effect that part of the tract would be benefited by the
road and part of it would not. We find considerable
evidence tending to show that part of this tract would
receive benefits of a character common to other lands.
As there was evidence tending to show that portion of
the defendants' land would receive general benefits
common to other lands, the objection was properly
sustained. Aside from the value of the land actually
taken, the question seeks to get an opinion as to what
the verdict should be. It is very general and seeks to
cover the whole subject of damages and benefits to the
land not taken. If counsel will ask such general
questions they must so frame them as to exclude the
consideration of general benefits. This and other like
questions asked by the plaintiff were properly
excluded. It follows from all this that the court did
not err in refusing the plaintiff's second and third
instructions.

5. During the trial before the jury the defendants
offered to make proof of the value of the land at that
date, namely, the ninth of November, 1888; but the
court rejected this proof, and held that the damages
were to be assessed as of November 22, 1886, the date

at which the commissioners made their report, and of this ruling error is assigned by the defendants.

In the recent case of *Railroad v. Town-Site Co.*, 103 Mo. 451, the railroad company took possession and built its road upon the land in September, 1886, but did not commence proceedings to condemn until the sixth of August, 1887. The property increased in value in the meantime, and it was held that the damages should be assessed on the basis of the value of the land at the date of the assessment. The assessment in question there was made by commissioners. Here the company paid the amount of the commissioners' award into court on the day the award was made.

While it does not appear from the evidence in this case when the company took possession, it seems to be conceded that the company did proceed with the work of constructing the road over this land shortly after the money was paid into court. We have just held in another case between these parties that the company had the right to enter upon the land and proceed with the construction of the road, upon paying to defendants, or into court for them, the amount of the award, and this too notwithstanding exceptions filed to the report. Indeed, the statute says that "on making such payment it shall be lawful for such company to hold the interest in the property so appropriated." Where, as here, the amount of the award is paid into court on the incoming of the commissioners' report, the date of making their assessment is the date of the appropriation. Any subsequent reassessment relates back and takes effect as of that date. We think it follows from these considerations that where the company pays to the landowner, or into court for him, the amount of the commissioners' award, that any reassessment af the damages must be on the basis of the value of the land at the date of the commissioners'

report.    This rule works out substantial justice to both parties.

6. But the trial court directed the jury to allow interest on the amount of damages found by them from the twenty-second of November, 1886, the date of the commissioners' report, down to the date of the trial before the jury, and of this ruling the plaintiff complains.

If the defendants had the right to withdraw and use the money paid to the clerk of the court, then it is clear the plaintiff ought not to pay interest on that amount; but, if the defendants had not the right to withdraw and use the money, then plaintiff ought to pay interest.    Now we have held in the injunction suit between these  parties, that the company can on paying to the landowner or into court for him, the amount of the commissioners' award, take possession of the land and construct its road thereon; that the amount of the first award being paid to the owner or into court for him, the company can proceed to use the land appropriated; and that the company or land-owner may thereafter prosecute exceptions, have a jury trial and appeal to this court.    The company has the right to use the property by paying the amount of the first award; and the question is, whether the land-owner has the corresponding right to withdraw and use the money pending further proceedings.    We are of the opinion he has such right.    As said in the other case between these parties, section 21 of article 2 of the constitution is emphatic in two respects:    *First,* the compensation must be ascertained, either by a jury or by a board of commissioners of not less than three free-holders; *second,* the compensation thus ascertained must be paid to the owner or into court for him, before the condemning company can take possession. To use the language of the constitution, ''And until the

same (the compensation) shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested."

This constitutional provision contemplates that the compensation shall be paid before the property can be disturbed. It is not satisfied with a mere deposit by way of security, not to be withdrawn until the final disposition of the case. It says nothing about a deposit by way of security. If the owner will not accept the money, it can be paid into court for him, not there to remain as a security for the final award, but for his immediate use. He has the right to withdraw and use the money the same as the company has the right to use the property, he being bound to refund if the final award is less, and the company being bound to pay the excess if the final award is more than that first allowed. The right to have the amount of the first award placed at the disposal of the property owner before his property is disturbed is a constitutional right, of which he cannot be deprived by any act of the legislature. Indeed, the legislature has not attempted to deprive him of such right; for the statute does not say that the money paid to the clerk shall remain with the clerk until there is a final disposition of the case. It contemplates that the money be paid to the clerk for the landowner, and that the company may go on and use the property and the landowner use the money, and that each has the right still to prosecute exceptions to the report so far as concerns the final amount to be paid. As we have before said, this right to prosecute exceptions is a statutory, not a constitutional right.

If the condemning company is not satisfied to pay the money into court for the immediate use of the owner, and not simply by way of a mere deposit as a security for the amount that may be finally awarded, it must

defer taking possession until the final adjudication. It in this respect stands in no better position than the landowner. As the landowner may withdraw and use the money paid to the clerk for him, it follows that the company should not thereafter be required to pay interest on the amount thus paid into court, but it should pay interest on the excess, if any, found by the jury. The judgment is reversed, and the cause remanded for further proceedings in conformity herewith. All concur.