## ST. LOUIS, KEOKUK & NORTHWESTERN RAILROAD COMPANY v. CLARK et al., Appellants.

### In Banc, December 23, 1893.

1. **Condemnation Proceeding:** RAILROAD: APPEAL. Under the act of the General Assembly of 1891 (Acts, 1891, p. 70) giving the right of appeal "from any special order after final judgment in the cause," an appeal will lie in a railroad condemnation proceeding from the refusal of the court to direct payment to the defendant of the amount of the award of the commissioners, where the company took and retains possession of the condemned land.

2. ———: ———: COMMISSIONERS' AWARD: LAND OWNER'S RIGHT TO DEPOSIT: CONSTITUTION. The award of the commissioners is not, in such case, merged in or vacated by, the final judgment of the court entered on the verdict of the jury assessing the damages and where payment of the award of the commissioners has been made into the court and possession of the land taken, the owner is entitled under

| | |
|---|---|
| 119 | 357 |
| 120 | 35 |
| 120 | 395 |
| 120 | 561 |
| 119 | 357 |
| 121 | 187 |
| 119 | 357 |
| 149 | 104 |
| 80a | 537 |
| 119 | 357 |
| 158 | 622 |

the constitution (article 2, sec. 21) to the money, notwithstanding the subsequent verdict of the jury for a less sum or the pendency of an appeal. (*Fowler v. Railroad*, 113 Mo. 458, and *Rothan v. Railroad*, 113 Mo. 132, *affirmed.*)

3. ——: ——: TENDER. Where payment is required and is refused, a tender will satisfy the requirement, but if a suit is brought on the obligation, the obligor must keep his tender good by having the money before the court on the trial.

4. ——: ——: STARE DECISIS. The advantages secured to corporations under the case of *St. Louis & S. F. R'y Co. v. Evans & Howard Brick Co.* (85 Mo. 319), in giving them the temporary use of land condemned and withholding from the owner the payment of the compensation paid into court pending appeal, should not be considered as a rule of property or of right within the doctrine of *stare decisis*.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Lee & Ellis* and *Rowell & Ferris*, for appellants.

(1) The application for the payment of the amount of award to Clark and others was made after the judgment in the circuit court and after appeal by the railroad company therefrom, and, therefore, could not have been included in said judgment and appeal. In such cases appeals will lie from orders after judgment. *St. Louis v. Brooks*, 107 Mo. 383. But the amendatory act of 1891 has removed all doubt from this question. Acts of 1891, page 70. (2) Clark had the same right after judgment to demand from the circuit court the amount of the award that he had before judgment. His right to receive and use this award of $87,510, until the final settlement of his rights, is a right which antedates the judgment, was not on trial, and which was in no sense derived from the judgment, but came direct to Clark from the constitution itself at the time when the railroad company accepted the beneficial results of the

award by taking exclusive possession of the land condemned. Section 21, Bill of Rights, Mo. Const.; *Railroad v. Fowler*, 20 S. W. Rep. 1069. (3) A judgment appealed from and superseded by an appeal bond is not a finality, not *res adjudicata*, and no bar to such rights as depend alone upon the final determination of the issues in the suit. *State ex rel. v. Dillon*, 96 Mo. 56; *Cohn v. Lehman*, 93 Mo. 574; *Ketchum v. Thatcher*, 12 Mo. App. 185; *Murphy v. DeFrance*, 101 Mo. 151; *Chouteau v. Rowse*, 90 Mo. 191; *Day v. DeYonge*, 66 Mich. 550; *Byrne v. Prather*, 14 La. Ann. 653; *Glenn v. Brush*, 3 Colo. 26; *Campbell v. Howard*, 5 Mass. 376; *Sharon v. Hill*, 26 Fed. Rep. 337; *Woodbury v. Bowman*, 13 Cal. 634. (4) The opinion of this court in the *Fowler case* is a correct exposition and application of the constitutional provisions regulating eminent domain. *Railroad v. Fowler*, 20 S. W. Rep. 1069. The language used in section 21 of our bill of rights is clear, unambiguous and needs no interpretation. Smith Commentaries, sec. 478. But if there be room for two constructions, the one most favorable to the land owner should be adopted. Cooley's Const. Lim. [6 Ed.], p. 651; Lewis on Eminent Domain, sec. 341, par. 1, 6; *Mitchell v. Railroad*, 68 Ill. 289. The words "paid into court for the owner," mean for the owner's use, and not merely deposited for his security. *Redman v. Railroad*, 33 N. J. Eq. 165; *Johnson v. Railroad*, 45 N. J. Eq. 454; *Company v. Burket*, 26 Ind. 53–57; *Graham v. Railroad*, 27 Ind. 260; *Meily v. Zurmehly*, 20 Ohio St. 627; *Wagner v. Railroad*, 38 Ohio St. 32; *Kaime v. Railroad*, 30 Minn. 423; *Railroad v. Grady*, 6 Ky. 144. *Carisco v. Calvin*, 17 S. W. Rep. 854; *Railroad v. Piel*, 87 Ky. 267; *Pearson v. Johnson*, 54 Miss. 259; *Chambers v. Railroad*, 10 Am. and Eng. R. R. Cases, 376; *Oliver v. Railroad*, 83 Ga. 257; *Railroad v. Jones*, 68 Ala. 48; *Faust v. Huntsville*, 83 Ala. 279.

*Geo. A. Madill* and *John G. Chandler*, for respondent.

(1) The circuit court having rendered final judgment, disposing of all the funds in court, in the June term, 1892, from which appeal was taken, with *supersedeas* to the October term, 1892, of the supreme court, it was not in the power of the circuit court at December term, 1892, to order the fund paid over to appellants, defendants below. 1 R. S. 1889, secs. 2206, 2304, 2307; *Sharon v. Hill*, 26 Fed. Rep. 337; *Hills v. Sherwood*, 33 Cal. 478; *U. S. v. The Peggy*, 1 Cranch, 103; *Gilmore v. Ins. Co.*, 2 Pac. Rep. 382; *State ex rel. v. Sutterfield*, 54 Mo. 394; Freeman on Judgments [4 Ed.], secs. 16, 21; *Rogers v. Gosnell*, 51 Mo. 468; *Smith v. Mayor*, 1 Gray, 468; 1 Tidd's Practice [4 Ed.], 530; *Bank v. Wheeler*, 28 Conn. 433; Bigelow on Estoppel [5 Ed.], 52; *Meyer v. Campbell*, 12 Mo. 603; *Christy v. Flanagan*, 87 Mo. 670; *State ex rel. v. Dillon*, 96 Mo. 56; *Foster's Adm'r v. Rucker's Ex'r*, 26 Mo. 494; *Ladd v. Cousins*, 35 Mo. 513; *Stewart v. Stringer*, 41 Mo. 400. (2) The authorities cited under appellant's point 2 only hold that the judgment appealed from can not be used in support of a plea of *res adjudicata*, or as the basis of a collateral action. They have no bearing on the powers of the court, by which the judgment was rendered. The argument of appellants is founded on a fallacy, an ambiguity in the term final judgment, which may mean final as to the rights of the parties, or final as to the court rendering it. *Sharon v. Hill*, 26 Fed. Rep. 337, 389; *Hills v. Sherwood*, 33 Cal. 478; *U. S. v. The Peggy*, 1 Cranch, 103; *Gilmore v. Ins. Co.*, 2 Pac. Rep. 332; *State ex rel. v. Sutterfield*, 54 Mo. 394; Freeman on Judgments [4 Ed.], sec. 21. (3) After an appeal allowed, the court which rendered the judgment appealed from, has

no jurisdiction. Freeman on Judgments [4 Ed.], sec. 16; *Rogers v. Gosnell*, 51 Mo. 468; *Meyer v. Campbell*, 12 Mo. 603; *Foster's Adm'r v. Rucker's Ex'r*, 26 Mo. 494; *Ladd v. Cousins*, 35 Mo. 513; *Stewart v. Stringer*, 41 Mo. 400; *Smith v. Mayor*, 1 Gray, 72. (4) *Railroad v. Fowler* is neither a precedent nor a rule for decision of the case at bar. Const., art. 2, sec. 21; art. 12, sec. 4; 3 Blackstone's Com., 23; Coke on Litt. 58a; *Hobart v. Hobart*, 45 Iowa, 501; 4 Am. and Eng. Encyclopedia of Law, 447, and citations; *Railroad v. Brick Co.*, 85 Mo. 307; *Cohens v. Virginia*, 6 Wheat. (U. S.), 399; Wells on Res Adjudicata and Stare Decisis, sec. 583. (5) The opinion expressed *arguendo* in the *Fowler case*, outside the facts in the record, can not control the judgment in any subsequent suit. *Cohens v. Virginia*, 6 Wheat. (U. S.) 399; Wells on Res Adjudicata and Stare Decisis, sec. 583. (6) The rule *stare decisis* requires that in the case at bar the opinion in the *Fowler case* be disregarded and the decision in the *Brick Co. case* followed. *Bates v. Relyea*, 23 Wend. 340; 1 Kent's Com. 475; *Reed v. Ownby*, 44 Mo. 204; *State ex rel. v. Sutterfield*, 54 Mo. 397; *Smith v. Clark County*, 54 Mo. 58; Broom's Legal Maxims, 140.

MACFARLANE, J.—This was a proceeding in condemnation in the circuit court, City of St. Louis, Missouri, in behalf of the plaintiff, a railroad company, against the defendants, Clark and others, as the owners of certain land described in the petition. Commissioners were duly appointed, who reported and awarded to the defendants as compensation the sum of $87,510, which sum of money the railroad company paid into court and thereupon took possession of the land condemned and has retained the same ever since, using it for the purposes of its railroad.

Thereafter exceptions were filed to such report by

both plaintiffs and defendants. A reassessment of damages was had before the court, by a jury, and a verdict was returned assessing the compensation to which the defendants were entitled, at the sum of $72,018. The court entered up a judgment on said verdict in favor of defendants and against the plaintiff for the amount of the verdict together with six per cent. interest thereon from the date of condemnation until the verdict, amounting in all to $74,418.78. The judgment concluded as follows:

"And it is further considered, adjudged and ordered by the court that out of said fund paid into court by said railroad company, as aforesaid, there be paid to said Clark, Rowse, and the Connecticut Mutual Life Insurance Company, the sum of $74,418.78, in payment and satisfaction of said damages and said interest on same, and that the balance of said fund and the accumulations thereof, be paid to said railroad company; and it is further ordered that the costs of this proceeding, as to said appellants, occasioned by the litigation subsequent to the filing and copying of the report of commissioners herein, be paid one-half by each of said parties, plaintiff and defendant, respectively."

The railroad company filed its motion for a new trial in the circuit court which was overruled, and from such judgment the railroad company took an appeal, giving a proper *supersedeas* bond in support thereof, which appeal is now pending in this court.

Afterwards the defendants filed their motion and application in the circuit court for an order directing the payment to them of said sum of $87,510, being the amount of the award of the commissioners. On the twenty-fourth day of January, 1893, this motion and application of defendants was overruled. They thereupon filed their motion for a rehearing, which being overruled, they appealed to this court. A motion was

filed in this court to dismiss the appeal and thereupon the cause was advanced and the motion and appeal upon its merits were heard together.

I. An act of the general assembly of the state, approved in 1891 (Acts of 1891, p. 70), gives in express terms, the right of appeal "from any special order after final judgment in the cause." The appeal of defendants after final judgment was properly allowed under this statute, unless the award of the commissioners was merged in or vacated by the final judgment of the court upon the verdict of the jury.

II. The question then, is, whether defendants had the right to demand the amount of the award of the commissioners, notwithstanding the judgment of the court directing the disposition of the fund so awarded and deposited in court. A determination of the question necessarily involves a construction of the constitution and statutes of the state bearing on the exercise of the right of eminent domain by a railroad corporation.

Section 21 of the bill of rights declares that "private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three free-holders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested."

Under the subdivision of the constitution relating to corporations, section 4, article 12, it is ordained that: "The right of trial by jury shall be held inviolate in all trials of claims for compensation, when, in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right."

The legislature has the power to prescribe and reg-

ulate the methods and proceedings for ascertaining and paying to the owner the compensation, subject only to the foregoing constitutional limitations. The statutes of the state have been revised since the adoption of the constitution, and their provisions for the condemnation of land must be made to harmonize with the terms of the constitution if the language used will admit of such construction, and if any part is found to be wholly irreconcilable such part can be rejected.

Section 2736 provides for the appointment of three commissioners to assess the damages and prescribes their duties. After they make report of their assessment and file the same with the clerk it is provided that the "company shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have been assessed; and on making such payment it shall be lawful for such company to hold the interest in the property so appropriated for the uses aforesaid; and upon failure to pay the assessment aforesaid, the court may, upon motion and notice by the party entitled to such damages enforce the payment of the same by execution."

If no objection is made by either party, to the award, a compliance with the requirements of this section completes the condemnation. If either party is not satisfied with the amount of damages assessed, section 2738, provides that "the report of said commissioners may be reviewed by the court in which the proceedings are had, on written exceptions, filed by either party in the clerk's office, within ten days after the service of the notice aforesaid; and the court shall make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown. Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry

of damages; but notwithstanding such exceptions, such company may proceed to erect said telephone or telegraph line, or construct said road or railroad; and any subsequent proceedings shall only affect the amount of compensation to be allowed."

Under this chapter no provision is made for an appeal. It has been held, however, that under the general law regulating practice in civil cases, an appeal will lie from a judgment rendered upon the verdict of a jury which will be superseded by an appeal bond as in other civil cases. *Railroad v. Evans & Howard Brick Co.*, 85 Mo. 319; *Rothan v. Railroad*, 113 Mo. 132; *Railroad v. Fowler*, 113 Mo. 458. The correctness of the ruling in these cases is not questioned.

The inquiry now is, what force and effect the award of commissioners had after a reassessment by a jury, a judgment for the damages thus assessed, and an appeal therefrom. If it was merged in the judgment and thereafter stood for naught and the fund paid into court for defendant was disposed of under that judgment then there was nothing upon which the order to pay to defendants the amount awarded them could operate, and the court did not err in refusing to grant the order. On the other hand, if the commissioners' award stood for just compensation until proceedings upon exceptions were finally concluded and the compensation determined, and if defendants, under the constitution and statute had the right to demand and receive payment of the amount of damages awarded them by the commissioners, then the court should have made the order requested.

As to what will satisfy the constitutional requirement that until compensation shall be "paid to the owner or into court for the owner" his rights in the property shall not be affected, the decisions of this court are not harmonious. In the *Rothan* and *Fowler*

*cases, supra,* it was held in the latter directly, that before the condemning corporation was entitled to take possession of the land and make its improvements thereon the damages assessed should be paid to the owner or into court for him whenever demanded; that the constitution was not satisfied by a mere deposit of the money in court as a security for the payment of compensation when it should be finally determined by judicial decision. These decisions were unanimously concurred in by the judges of one division of the court and virtually overruled the *Evans–Howard case, supra,* in which it was held that the money when paid into court for the owner "should remain therein to await the ultimate determination of the suit."

It is now urged that the ruling in the *Evans–Howard case* was not only a correct construction but that it has also remained unchallenged for years, was understood and recognized by the profession and the community as a correct interpretation, was acted upon and followed by the plaintiff as a rule of property and of right and, whether right or wrong in principle, should not now be disturbed or departed from.

The language of the constitution "paid to the owner or into court for the owner" is simple and unequivocal and, as we read it, clearly and emphatically declares the right of the owner to payment of the amount of compensation awarded him by the commissioners before his proprietary rights in the property are disturbed. This is the plain, obvious and common sense meaning of the language used, and the context furnishes no ground to control, modify or enlarge it. "Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on

the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings.   The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and can not be presumed to admit in them any recondite meaning or any extraordinary gloss."    1 Story on the Const., section 451.

That the land owner is entitled to compensation before his property is appropriated, is not only clearly expressed by the carefully selected words of the constitution, but is as clearly enjoined by every principle of natural right, and justice.   While these corporations are invested with the soverign right of eminent domain it is clearly in their private interests.   A citizen is entitled, as a natural right, to the enjoyment, of his property, and a disposal of it on his own terms.   The power of depriving him of it, even with payment, at an estimate fixed by others, is most extraordinary, and the right should be construed with the greatest strictness. If the money paid into court for the owner is to remain in court as a mere deposit until a final judicial determination of the true compensation, then it would stand as a mere security for a future payment at the same time entitling the corporation to full use and enjoyment of the property pending possible years of vexatious litigation.

The constitution in force when the present one was framed provided on this subject that: "No private property ought to be taken or applied to public use without just compensation."   Under this declaration of rights a statute providing that it should be lawful for the company to take possession of the land upon payment to the clerk of the award assessed by commissioners for the benefit of the owner, was construed to authorize the clerk to hold the money as a means of

future payment. *Ring v. Bridge Co.*, 57 Mo. 498. It was also held in that case as a principle "too well settled to require any argument or citation of authorities, that a company can not condemn, appropriate or take possession of property and convert it to their own use unless they make compensation to the owners."

It must be assumed that the convention that formulated the declaration of rights contained in the present constitution, had before it the provisions of the one then in force and the constructions given it, and that, by the radical change made in the language, a greater security in property rights, was deemed necessary. To give to the positive declaration of the present constitution the broad construction given the language of the preceding one, would do violence to the words employed and the manifest intention of the convention that framed it, and of the people by whom it was adopted.

Provisions of the constitutions of other states requiring payment of compensation to the owner before his proprietary rights in his property could be disturbed, which are no more emphatic than that contained in our bill of rights, have uniformly been held to be satisfied only by actual payment or tender.

The constitution of New Jersey ordains that "individuals or private corporations shall not be authorized to take private property for public use, without just compensation first made to the owners." A statute of the state providing that in case any company should appeal from the finding of the commissioners, the company should, upon payment of the amount assessed into court, be empowered to take possession of the land and proceed with the work of constructing its road, was held unconstitutional and void. *Redman v. Railroad*, 33 N. J. Eq. 165.

Now the command of our constitution that compensation shall be made to the owner as a prerequisite

to taking possession of the land is as imperative as that contained in the constitution of New Jersey.

The constitution of Indiana declared that "no man's property shall be taken by law without just compensation; nor, except in case of the state, without such compensation first assessed and tendered." Under the protection thus given, it was held "that a law which authorizes the party condemning to take possession pending an appeal by him, by depositing the damages assessed to be withheld from the owner of the land until such appeal was determined, was unconstitutional in so far as it authorized the withholding of the money." The effect of the decision was that a deposit in court upon a condition was not a sufficient tender to satisfy the constitution.  In the same case, and others cited, it was held that an unconditional payment into court, for the use of the land owner, was equivalent to a tender.

It was also held by the same court in another case (*Meyer v. State ex rel.*, 125 Ind. 335) that an appeal by the condemning party with *supersedeas* would not excuse the clerk from paying over to the land owner the money deposited to his use.

Under the constitution of Ohio possession of the land could not be taken "until full compensation therefor be first made in money, or first secured by a deposit of money to the owner."  The supreme court of the state construed a statute, requiring the adjudged compensation to be paid "into court" for the use of the owner, to imply that the land owner was entitled to it on demand, notwithstanding proceedings in error. *Meily v. Zurmehly*, 23 Ohio State, 628.  The court says: "The statute seems to contemplate that when the corporation takes the land the owner shall have an equal right to have the amount adjudged to him therefor; and leaves each party to the risk of any recovery,

to which one may be entitled against the other, as a result of the proceedings in error."

The constitution of Georgia declared: "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." A statute which declared that the entering an appeal and the proceedings thereon should not hinder or delay the work, but the same may proceed without let or hindrance from the time said condemnation proceedings were begun, was "incompatible with the constitution, if it is to be so construed as attempting to confer the right of proceeding with the work pending an appeal taken by the company, without first complying with the constitutional requirement of paying just and adequate compensation." The statutes of the state provided for a preliminary assessment by commissioners and the payment or tender of the amount of the award to the owner before the company should have the right to possession: An appeal from this assessment was allowed with the effect above stated. The court held that as an appeal was not a constitutional right the assessment of the commissioners might have been made final and conclusive, and concluded that the award assessed stood, *prima facie*, as just compensation until a final judicial determination. *Oliver v. Railroad*, 83 Ga. 258.

The proceedings provided by the Georgia legislature are so similar to the statute under consideration that we quote at length from the conclusion of the court:

"The land owner, no matter which party appeals, may accept the tender, at the peril of having to refund in case the award is reduced on the trial of the appeal, and the corporation may pay, enter and go to work, at the peril of having its provisional title defeated as by a condition subsequent, if it should fail to pay any addi-

tional amount recovered against it by final judgment on the appeal. In this way the statutory right of appeal can be enjoyed by either party, or by both, without infringing the constitution or necessarily thwarting the legislative intention of allowing the work to proceed pending the appeal; but in no other way apparent to us can both these objects be accomplished.

"It was competent for the legislature, as it has done, to declare tender a substitute for actual payment where the tender is declined. If the land owner will not receive the money awarded him by the assessors, he has no one to blame but himself. *Cremor v. Nelson,* 23 Cal. 464; *Browning v. Railroad,* 3 Green Ch. 47; *Mettler v. Railroad,* 25 N. J. Eq. 214; *Redmond v. Railroad,* 33 *Ib.* 165; *Mercer, etc., Railroad v. Railroad,* 26 *Ib.* 464; *Johnson v. Railroad,* 17 Atl. Rep. 574. According to some of these cases, the time of tender, that is, whether before or after the appeal is entered, is material; but we think, under our statute, the time is immaterial, for, though the award may be considered as vacated by the appeal, for most purposes, the statute restricts the tender to no particular time, and the amount of the award itself is no less certain after appeal than before, nor is its force as *prima facie* evidence of value and damages impaired by the appeal. Of course, should tender be delayed until after the appeal is tried, the amount requisite to tender is to be measured then, not by the award, but by the verdict or the judgment rendered in the appeal proceedings."

The authorities we have cited show the earnestness with which the courts of the country have maintained the rights of property owners under cognate constitutional declarations. See, also, to the same effect, *Kanne v. Railroad,* 30 Minn. 423; *Railroad v. Piel,* 87 Ky. 267; *Pearson v. Johnson,* 54 Miss. 259; *Faust v. Huntsville,* 83 Ala. 281; Pierce on Railroads, p. 166;

2 Wood on Railroads, sec. 246.

It will be seen from the foregoing authorities that where payment is required by the constitution, it is satisfied by a tender. This is also the rule at common law. Where payment is required and is refused, a tender will satisfy the requirement; but, if a suit is brought on the obligation, the obligor must keep his tender good by having the money before the court on the trial. 1 Tidd's Pr., 619–624; 3 Black. Com. 304, note 22.

It will also be seen by the cases before cited, that a statute requiring a deposit of the money in court for the use of the land owner satisfies the constitutional requirement that a tender be made, but the deposit must be unconditionally for the owner when demanded.

The language of the declaration of rights contained in our constitution, "paid into court for the owner," clearly expresses the right of the owner to demand and claim it. It has the effect of a tender by an unconditional deposit for him. If it is to remain on deposit as security for the amount afterwards ascertained, it would not be *for* him in case the damages assessed by the commissioners were diminished. If the framers of the constitution had intended that the corporation should have the right to possession of the property upon depositing in court the amount of the award of the commissioners, as security to the land owner for his compensation, it could easily have been so declared.

Section 2736 of the statute provides for the assessment of damages by commissioners. If both parties are satisfied with the award, a payment to the owner vests in the corporation the right to enter on the land and make its improvements, and the matter ends there. If the award is not satisfactory, the corporation is authorized to pay the amount of the assessment, that is, the assessment of the commissioners, to the clerk of the court,

for the owner, and take possession.   No authority is
given for taking possession by the corporation, pending
litigation, except on condition of paying the exact
amount assessed by the commissioners.

Section 2738 provides for exceptions, a jury trial
under supervision of the court, and the general law
gives the right of appeal.   Pending all these proceed-
ings, exceptions, trials, possible new trials, appeals and
possible reversions and re-trials, no right is given to
take possession, except on payment of the amount
awarded by the commissioners. Payment of the amount
of a judgment on the verdict of a jury, if appealed
from, would not entitle the corporation to take pos-
session.   Throughout all the proceedings the amount
assessed by the commissioners stands *prima facie* as
just compensation and is conclusive on both parties
until a judicial determination.   No power is given to
the court to change, lessen or increase the amount so
as to affect the rights of the parties thereunder until the
litigation ends in a final and conclusive judgment.

When the compensation was finally determined,
the court had the undoubted power to adjudge the
rights of the parties under the entire proceedings.  If the
land owner had been paid more than the amount of
the final judgment he could be adjudged to refund.  If
on the other hand the judgment for damages exceeded
the award of commissioners the corporation could be
made to pay the excess and its right to possession
would cease until the same was paid to the land owner
or into court for him.   There is no hardship to the
corporation in this.   It is given the right to pay the
assessment and to proceed with its improvements.
This provision is for its benefit in that it prevents
delays and obstructions in the way of railroad enter-
prises.

The court incorporated in the judgment for dam-

ages an adjustment of the difference between the assessment of the commissioners and that of the jury. As has been seen the statute makes no provision for the company to take possession pending the litigation even after the appeal, except upon payment of the damages awarded by the commissioners. The judgment was well enough, except in allowing defendant's interest, had no appeal been taken, but should not stand in the way of the rights of defendants to demand the damages awarded them by the commissioners. Neither a judgment, an appeal bond, or a payment of a part only of the award of the commissioners satisfies the demands of the constitutional right of the land owner to have payment as a condition to the appropriation of his property.

III. We do not think the rights of condemning corporations declared in the *Evans-Howard case* such as to demand the application of the rule *stare decisis*. The construction of the statute here announced does not in the least affect titles already acquired by railroad corporations, nor does the rule announced in the *Evans-Howard case* authorize the permanent appropriation of land, except upon payment to the owner of compensation to be ascertained in the manner pointed out by the statute as herein construed. The advantages that are to be secured by the corporation in giving it a temporary use of the land and withholding from the owner payment therefor until the termination of protracted, expensive and vexatious litigation should not be considered as a rule of property or of right, binding upon the courts for all time. Such a rule, unjust as it is in principle, should not be followed, unless clearly and unequivocally authorized by the organic law of the state. The vested rights of all property owners to the possession and enjoyment of their property, can not be swept away by a single decision of

this court to which they were not parties. We do not think a precedent can be found in which the rule *stare decisis* has been applied to such a case. The rule is intended to give notoriety and stability to property rights that the "people in general can venture with confidence to buy and trust and deal with each other," and that "the great land marks of property" may be firmly settled. 4 Kent's Com. 476. The view we take of the constitution in this case does not disturb or unsettle any of the "great land marks of property" established by the former decision, or prevent the corporations or and owners from confidently dealing with each other. The decision affects only future dealings and not the rights acquired under those already consummated.

The court should have ordered the damages assessed by the commissioners paid over to defendants as requested. The order of the court is reversed and the cause remanded with directions to proceed in accordance with this opinion. SHERWOOD, J., dissents. BARCLAY, J., absent, the other judges concur.