St. Louis, Keokuk & Northwestern Railway Company, *Appellant*, v. Clark *et al.*

In Banc, March 24, 1894.

1. **Railroad Condemnation:** EASEMENT: CONSTITUTION. A railroad in securing land for its tracks by condemnation proceedings acquires only an easement therein under the provisions of the constitution. (Art. 2, sec. 21.)

2. ———: RIGHT OF WAY: LANDOWNER'S USE OF SURFACE. Where land is condemned for a railroad right of way the owner of the fee is not entitled to the use of the surface, except at public places and private crossings.

3. **Railroad:** FENCES. Railroads in this state are required to be fenced where it can be done without interfering with their public use.

The St. L., K. & N. W. R'y Co. v. Clark.

4. **Railroad Condemnation**: EVIDENCE: DAMAGES: SALES OF NEIGH-BORING PROPERTY. Evidence of the price paid about the same time in private sales for neighboring property is competent in estimating damages in a railroad condemnation proceeding.

5. **Contract**: STATUTE OF FRAUDS. Contracts within the statute of frauds are not void but are voidable only at the election of the party to be charged.

6. ———: ———. The benefit of the statute of frauds can not be claimed by one not a party to the contract and who is not sought to be charged thereby.

7. **Railroad Condemnation**: AWARD: INTEREST. When, in a railroad condemnation proceeding, the company has paid the award into court and the court has ordered it to be paid to the owner the latter is entitled only to such interest as the money has actually earned while in the custody of the court.

8. ———: DAMAGES. The fact that by the condemnation, a railroad empowered by the city to run switch tracks for private use is cut off from access to the landowner's wharf is an element of damages.

9. ———: ———: INSTRUCTION. It was proper to instruct the jury that the railroad so authorized to run switch tracks for private purposes was not bound to continue its custom of hauling over the switches without charging therefor.

10. **Railroad Condemnation**: OPEN CROSSINGS: REDUCTION OF DAMAGES. A railroad, in a condemnation proceeding, may, in diminution of damages, offer to construct open crossings to aid the owner in the use of his land as one tract. (MACFARLANE, J., *dissenting*.)

ON MOTION FOR REHEARING.

1. **Railroad Condemnation**: OPEN CROSSINGS: REDUCTION OF DAMAGES. Although the appropriation of land by a railroad is complete when it pays into the court the amount of damages awarded by the commissioners and takes possession, still, on a subsequent trial of the question of damages before a jury on an appeal from the award, the railroad may in reduction of the damages offer to build and maintain for the owner open crossings to aid in the use of the land as one tract.

2. ———: ———: ———: AMENDMENT OF PETITION. Such offer will be treated as in the nature of an amendment to the petition; the defendants being entitled to a postponement of the trial if surprised.

3. ———: DAMAGES. The landowner can not show as an element of damages an oral agreement of another railroad company to build side tracks to connect with tracks on the land sought to be condemned which can not be carried out, owing to plaintiff's appropriation of the land.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*John G. Chandler* and *G. A. Madill* for appellant.

(1)   It is not true as stated in instruction number 1 given for respondents that "the railroad company is entitled to the exclusive possession and control of its right of way across Clark's land; and neither Clark nor any one claiming said land, or any part thereof, has a right to cross said railroad tracks, except upon a street or alley." The appellant railroad company acquires only an easement in the strip of land in question—the right to use it for railroad purposes. To the extent that the use of the land is necessary for railroad purposes, this right is paramount. But the right to the use of the land for all purposes consistent with this paramount right remains, where the title remains, with the owners of the land. The right to cross the tracks from one part of his land intersected thereby to another, reasonably exercised so as not to interfere with the operation and safety of trains, is such a use. Const., art. 2, sec. 21; R. S., sec. 2611; *Kellogg v. Malin*, 50 Mo. 496; *Belcher Co. v. Co.*, 82 Mo. 121; s. c., 101 Mo. 192; *Railroad v. McGrew*, 104 Mo. 282; *Evans v. Haeffer*, 29 Mo. 141; Lewis on Em. Dom., sec. 586; *Railroad v. Wooten*, 36 La. Ann. 441; *Presbury v. Railroad*, 103 Mass. 1; 2 Wood's R'y Law, p. 771; *Railroad v. Waterbury*, 23 Conn. 100; *Railroad v. Allen*, 22 Kan. 285; 31 Am. Rep. 190; *Railroad v. Kregelo*, 5 Pac. Rep. (Kan.) 15; *Co. v. Co.*, 5 Atl. Rep. (N. J.) 227. (2)   Respondent's tract of nearly forty acres is within the reason of the statute as to farm crossings. It is such a tract as appellant is required to fence to avoid

liabilities imposed by the statute. 1 R. S., secs. 2611, 4428; *Wymore v. Railroad*, 79 Mo. 247. (3) The cases of *Railroad v. Raymond*, 33 N. W. Rep. (Minn.) 704; *Railroad v. Miller*, 125 Mass. 1, and *Presbury v. Railroad*, 103 Mass. 1, in no way conflict with appellant's position, for they turned on statutes making specific provision for crossings. (4) It was competent for the appellant, at the trial, to limit the easement to be condemned, by a declaration and stipulation providing for crossings for respondents over the land condemned; and the court erred in rejecting the declaration and stipulation offered for that purpose. *Railroad v. Fletcher*, 21 N. E. Rep. (Ill.) 577; *Railroad v. Railroad*, 105 Ill. 388; *Hays v. Railroad*, 54 Ill. 573; *Packard v. Railroad*, 25 Atl. Rep. (N. J.) 506; *Carpenter v. Railroad*, 24 N. J. Eq. 249; s. c., 26 N. J. Eq. 168; Lewis on Em. Dom., sec. 481; *McGregor v. Gas Co.*, 21 Atl. Rep. (Penn.) 13; *Coal Co. v. Fuel Co.*, 19 Atl. Rep. 933; 131 Pa. St. 522; *Tyler v. Hudson*, 147 Mass. 609; *Railroad v. Owsley*, 13 Pac. Rep. (Wash.) 186; *Railroad v. Allen*, 22 Kan. 285; *Railroad v. Kregelo*, 5 Pac. Rep. (Kan.) 15. (5) The case of *Railroad v. McGrew*, 104 Mo. 282, is not an authority for the proposition stated in defendants' instruction number 1, nor is the case of *Jackson v. Railroad*, 25 Vt. 159. Much less are these cases authority for the denial to the railroad company of a right to consent to crossings over the right of way condemned. *Cohens v. Virginia*, 6 Wheat. (U. S.) 399; *Frantz v. Brown*, 17 S. & R. 287, 292; *Carroll v. Carroll*, 16 How. 275, 286. (6) Evidence of prices obtained on specific sales of other property was not competent to show respondents' damages from the appropriation by appellant of their land. *Springfield v. Schmook*, 68 Mo. 394; *Railroad v. Patterson*, 107 Pa. St. 461; *Railroad v. Vance*, 115 Pa. St. 325; *Stimson v. Railroad*, 27 Minn. 284. (7) Testi-

mony that witnesses Schnelle and Carpenter had been commissioners in the proceeding, or what they did in that character, was clearly incompetent. It was an indirect method of introducing the award of the commissioners in evidence, and was to defeat, practically, appellant's constitutional right to a jury trial. Const., art. 12, sec. 4; *Railroad v. Miller*, 106 Mo. 458; *Railroad v. Town Site Co.*, 103 Mo. 451. (8) The witness, Geo. Muench, was competent to testify as to the effect on the market value of Clark's land of side track and switch connections with appellant's railroad; and it was error to reject him. 1 Greenl. on Ev., secs. 440, 440*a*. (9) It was error to declare, as was done in defendants' instruction number 2 as matter of law, that the construction of appellants' railroad had deprived that portion of Clark's land lying east of said railroad of the right to connect, by switches, with the merchants, terminal railroad. This was in conflict with defendants' evidence, and against the law. 1 R. S., sec. 2543. (10) There was no evidence before the court to warrant defendants' instruction number 3. (11) The court erred in permitting defendants to prove by the witnesses, Clark, Overall and Rainwater, an oral grant by the Merchants' Bridge Terminal Railway Company of an easement in its land for the construction and maintenance of railroad tracks and switches for the use and benefit of the defendants' land. (12) In a condemnation proceeding prior to judgment, no interest is allowable by the common law or by any statute of the state of Missouri. 1 Sutherland on Dam., secs. 533, 835, 610, 614; 11 Am. and Eng. Encyclopedia of Law, 379; 2 R. S., sec. 6561; R. S., secs. 5972, 5974, 4430, 224, 2734, 2736, 2738; Const., art. 2, sec. 21; *Railroad v. Evans*, 85 Mo. 333; *Hamar v. Kirkwood*, 25 Miss. 95; *Close v. Field*, 2 Tex. 232; *Kenney v. Railroad*, 63 Mo. 99.

*Lee & Ellis* and *Rowell & Ferris* for respondents.

(1) Clark's instruction number 1, denying him the right to cross the railroad tracks, except at a public crossing, is a correct statement of the law, as applied to the facts in this case. *Railroad v. McGrew,* 104 Mo. 282. *First.* A common law right of way was of three kinds only: right by grant, right by prescription, right of necessity. Chase's Blackstone, pp. 230–234. Right of necessity, originates only in absolute necessity, and never in inconvenience, however great. 2 Wash. on Real Prop., top p. 30. *Second.* The Missouri statute does not give Clark a crossing; it only provides for farm crossings. 1 R. S. 1889, sec. 2611. Duty of fencing and farm crossings enjoined by statute, does not apply to lands in incorporated cities or towns. *Rhea v. Railroad,* 84 Mo. 345; *Edwards v. Railroad,* 66 Mo. 561. The statute brings the matter within the rule: *"expressio unius est exclusio alterius."* It requires a statute to authorize even a municipal corporation to cross a railroad track. *Railroad v. City,* 29 N. E. Rep. (Ind.) 780. In the absence of a statute the railroad is entitled to the exclusive use and control of its tracks and right of way, and the landowner is denied the right of crossing. *Railroad v. Greve,* 17 Minn. 322; *Railroad v. Holton,* 32 Vt. 43; *Railroad v. Skine,* 7 Harris, 298; *Jackson v. Railroad,* 25 Vt. 150; *Railroad v. Potter,* 42 Vt. 265; *Brainerd v. Clapp,* 10 Cush. 6; *Railroad v. Combs,* 51 Ark. 328; *Presbury v. Railroad,* 103 Mass. 1; *Kasson v. Railroad,* 8 Phila. 556; *Railroad v. Chicago,* 28 N. E. Rep. 720; *Henry v. Railroad,* 2 Iowa, 301; *Brey v. Railroad,* 103 Mass. ——; *Kyle v. Railroad,* 2 Barb. Ch. 490; *Railroad v. Meyers,* 17 N. Y. Sup. 311; *Quay v. Queen,* 17 Can. S. C. Rep. 30. (2) The offer of two crossings made by the railroad com-

pany, at the trial before the jury in the case at bar, if treated as a grant or concession of rights of way was properly rejected. Damages to landowner in condemnation proceedings must be in money, and there can not be given or reserved to the owner any easements or privileges in the property condemned, such as the right to construct a way over it, in lieu of a money compensation. *McGrew v. Railroad*, 104 Mo. 282; Lewis on Eminent Domain, section 505, and cases cited; *Railroad v. Holler*, 7 Ohio St. 222; *Railroad v. Melville*, 66 Ill. 329; *Railroad v. Munson*, 57 Mich. 45; *Chespeake v. Patton*, 6 W. Va. 147; *Railroad v. Halstead*, 7 W. Va. 301; *Hill v. Railroad*, 7 N. Y. 152; *In re Railroad*, 2 N. Y. Sup. 479. (3) Even if the offer in court be construed as an attempted reservation out of the taking of property, or out of the condemnation proceedings, it was still inadmissible. *First*. The offer was made after Clark had given his evidence and rested his case, and was, therefore, out of time, and in the discretion of the court, was properly rejected. *Second*. Condemnation proceedings are to be strictly construed, and the requirements imposed by statute admit of no substitute or equivalent. Lewis on Eminent Domain, sec. 240; *City v. Gleason*, 89 Mo. 67, 72. Our statute requires that the property taken by the railroad company, and the full extent thereof, with or without reservations, must be fully described in the petition. 1 R. S. 1889, sec. 2734. Where a statute requires a description of the land taken, to be placed in the petition, this requirement must be exactly complied with, and the petition is the basis and limit of the railroad's right. *Cedar Rapids v. Raymond*, 33 N. W. Rep. 704; *Ham v. City*, 100 Mass. 350; *Jury v. Railroad*, 127 Mass. 584; *Brey v. Miller*, 125 Mass. 1. (4) Defendant is entitled to interest on the award from the date the same was paid into the circuit court. *Plum*

*v. City*, 101 Mo. 529.   Nor is this inconsistent with the rule laid down in the *Fowler case.*   (5) That contracts within the statute are not void, but merely voidable; and that the party to be charged may waive the statute and the contract thereby become binding upon him is the settled law of this state.   *Huffman v. Ackley*, 34 Mo. 277; *Kratz v. Stocke*, 42 Mo. 351; *Maybee v. Moore*, 90 Mo. 340; *Aultman v. Booth*, 95 Mo. 385.   (6) The statute of frauds can not be taken advantage of by third persons.   *Cooper v. Hornsby*, 71 Ala. 62; *Christy v. Brien*, 14 Pac. Rep. 248; *Houser v. Lamont*, 55 Pa. St. 311; *Dock Co. v. Kinzie*, 49 Ill. 289; *Wright v. Jones*, 105 Ind. 17; *Savage v. Lee*, 101 Ind. 514; *Ames v. Jackson*, 115 Mass. 508.

MACFARLANE, J.—This is a proceeding to condemn a right of way, for the railroad of plaintiff, fifty feet wide, through a tract of about thirty-eight acres of land lying within and near the northern limits of the city of St. Louis, belonging to defendant Clark.   The tract is a parallelogram fronting on the Mississippi river about one thousand feet and extending back west from the river about one thousand, seven hundred feet to within about ninety feet of Hall street.   The river front, extending back west about four hundred and forty-six feet, was used by Clark as a wharf.   The river front both north and south of this wharf and extending back west from the river the same distance was a public wharf.   Clark's land was formerly bounded on the west by Hall street, but the strip of about ninety feet next to and east of Hall street had been sold and conveyed to the St. Louis Merchants' Bridge Terminal Railway Company.   The west side of the right of way through the public wharf, and that condemned through Clark's land, was parallel to, and eleven feet east of, the west line of the wharf.   No

street or public ground except the public wharf touched Clark's property. Bremen avenue, commencing at the public wharf, runs west parallel to, and about three hundred and twenty-five feet south of, Clark's south line and Angelica street also commencing at the public wharf ran west parallel to, and about one hundred and forty-five feet north of, Clark's north line. The right of way through the Clark tract took one and one hundred and thirty-five thousandths acres and left eight and sixty-eight one-hundredths acres on the east side next to the river and left twenty-eight and eighty-five hundredths acres on the west side. The only public way from one side of the right of way to the land on the other side was over the public wharf and through the eleven foot strip of that wharf west of the right of way. This passway could be used at either the north or south end of the land condemned. Along Hall street the St. Louis Merchants' Bridge Terminal Railway is laid. The situation will be more readily understood by reference to the following plat:

Vol. 121—12

The petition, asking the condemnation of the land for the construction, maintenance and operation of its road and for the appointment of commissioners to assess the damages therefor, was filed in the circuit court of the city of St. Louis. Commissioners were appointed, who afterwards made report allowing $87,510 as damages. Neither party being satisfied with the award, both demanded a jury. Plaintiff thereupon paid the amount of the award of the commissioners into court, took possession of the land and constructed its road.

A jury trial was afterwards had and the damages assessed at the sum of $72,000 and interest thereon from June 29, 1891 (the date plaintiff paid the money into court) at six per cent., making $2,019.18. Judgment was thereupon rendered for said sum, and it was ordered that the sum of $74,019.18 be paid defendant out of the money deposited in court and that the balance be paid plaintiff. Plaintiff gave bond and appealed from this judgment to this court. All the errors assigned grow out of the rulings of the court upon the trial.

I. The first instruction given at request of defendant is the subject of earnest complaint and the declaration of law therein announced is severely criticised. The instruction is as follows:

"1. The court instructs the jury that the railroad company is entitled to the exclusive possession and control of its right of way across Clark's land and neither Clark, nor anyone claiming said land or any part thereof has the right to cross said railroad tracks, except upon a street or alley.

It is manifest that the damage defendants may suffer by the maintenance and operation of the road depends largely upon the right to use the railroad track and right of way in passing from one part of their

land to the other. The question is a vital one in this case and merits careful consideration. The constitution itself provides that "the fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken." Sec. 21, art. 2, Const. of Mo. A railroad company, therefore, in securing land for its tracks by condemnation, under this limitation of its power, only acquires an easement therein. This constitutional provision, by its terms, applies only to lands condemned by railroad companies, but the same principle is applied to rights acquired by condemnation for other public uses. *Belcher Sugar Refining Co. v. Elevator Co.*, 82 Mo. 125. And was applied to land condemned for railroad purposes before the adoption of our present constitution. *Kellogg v. Malin*, 50 Mo. 496; *Evans v. Haefner*, 29 Mo. 150.

We must take it, then, as settled that plaintiff could acquire by these proceedings only the right to use the land for the purposes of its railroad, and the fee to the land taken remained in the defendants, but it does not follow that the owner retains even the right to a limited use of the surface of the land condemned.

It was said by NAPTON, J., in *Snyder v. Warford*, 11 Mo. 514, in speaking of the rights of the parties in land over which a private right of way existed that "it is not any interest in land, but merely an easement which conflicts not in the slightest degree with the absolute proprietorship of the owner." On the other hand while under the constitution the fee to the land condemned for public use for a railroad remains in the owner, it contemplates that all his proprietary rights, at least to the surface, may be divested.

It is clear that the relative rights acquired by the one obtaining an easement and of those remaining in the owner, depend much upon the character of the use

to which the easement is applied. A use for telegraph and telephone wires above the surface and for water mains and sewers beneath the surface would but slightly interfere with the proprietorship of the owner upon the surface of the ground. A plank or macadamized road on the surface would only interfere with the actual occupancy of the owner. Unless forbidden by some statutory regulation he could use all these easements in any manner not inconsistent with the full enjoyment of the uses to which they were intended to be applied. He could plow, plant and reap beneath the wires and over the sewers without material interference with these easements.

There is no reason, either under the constitution or common right, why all public easements should not be subject to reasonable regulations by the state. One could not defend against the charge of obstructing a public road on the ground that he was the owner of the fee therein; nor would the fact that he had left unobstructed a passway sufficient for all public travel, excuse him. The same may be said of horse racing or shooting at a mark on a public road.

It is unnecessary to state that the uses made of railroad tracks are vastly different from those of any other easement. Trains are not infrequently run upon them at the rate of twelve or fifteen hundred yards per minute. This rate of speed is demanded by the traveling and business public. Trains are run at all hours of the day and night. The least and most temporary obstruction is liable to cause terrible destruction of life and property. It takes no argument to show that the owner of a fee has no more right to imperil the safety of those lawfully using the track than has a stranger. The constitution does not limit the proprietary right in the track of the road from which the owner may be excluded. That all proprietorship to the surface of the

ground may be divested, if safety demands it, is plainly implied. The right of a railroad company to the use of its track is of necessity paramount to every right of the owner of the fee which is inconsistent with such use.

Much has been written on both sides of the question whether necessity demands an exclusive use by the company and excludes all proprietorship of the owner. Through industry of counsel the cases on both sides have been collated and will be found by reference to their briefs. These cases are useful in so far as they express general principles but most of them are governed by local law and in that respect are but little aid to us. It seems to me, upon principle, that the security of life and property and the safety of employees who operate trains, which consideration should be paramount to all private rights, require that railroad companies, except at public grounds, roads, streets and private crossings, should have a track clear and unobstructed at all times.

Aside from general principles, the policy of this state, as the same is indicated by legislation, clearly excludes the owner of the fee and all others from using a railroad track for any purpose other than at public places and private crossings. The right of the state to do so under police power can not be questioned. Railroads are built, maintained and operated for public uses, as well as for the private gain of the owners. In view of these public uses alone are they granted the power of eminent domain. They are controlled by the state, not only in respect to the rates of charges for carriage of freight and passengers, but are subject to the police regulations in respect to the management of their trains, the rate of their speed, the use of signals, and the condition of their tracks and machinery, all in

the interest and for the safety of the lives and property of the people.

An examination of the statutes will show that railroad companies are either required or permitted to securely fence their roads at every point not required for other public uses. Section 2611 of the Revised Statutes requires the erection of fences on both sides of the road "where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands." This would seem broad enough to include every part of the road in which a concurrent right of user by the public does not exist. The courts have made exceptions to the application of this law to tracks inside the limits of incorporated towns or cities, but they hold that even at these excepted points the companies have the right to fence, and if they do not do so that fact raises an inference of negligence in a suit for killing or injuring an animal at such unfenced point. *Radcliffe v. Railroad*, 90 Mo. 133; R. S. 1889, sec. 4428. Again, if stock go upon a track on account of the same not being fenced and are frightened by a locomotive or train of cars, and are thereby injured, the company is required to pay for the damages sustained and, if suit is brought, to pay also a reasonable attorney's fee for prosecuting the same. Secs. 2612 and 2613. The ry laws also apply to depot grounds and side tracks where it will not interfere with the use of the public or operation of the road. *Robertson v. Railroad*, 64 Mo. 412; *Morris v. Railroad*, 58 Mo. 78; *Swearingen v. Railroad*, 64 Mo. 73. By this legislation the policy of the law is clearly shown to be that railroad tracks shall be inclosed by fences where it can be done without interfering with other public uses.

Again, section 2611, *supra*, provides that "if any person shall ride, lead or drive any horses or other animals upon such road within such fences" without

the consent of the corporation, "he shall for every such offense, forfeit and pay a sum not exceeding $10." The same section provides that one injured by a train while walking on the track shall in an action to recover damages therefor be deemed a trespasser. While he could not be prosecuted for a trespass, the provision of the statute clearly shows that he had no right to go upon the track. *Barker v. Railroad*, 98 Mo. 53.

Now, in none of these provisions is there an expressed exception in favor of the landowners, except in respect to the right to farm crossings and in that case the crossing is required to be kept closed by gates. No more emphatic declaration of the policy of the state that a railroad company shall have the exclusive possession and control of its roadway, could be made, than the statute declaring that it should be inclosed by fences. The owner of the fee, as well as others, is excluded from concurrent use, unless he be entitled to a crossing, either under the statute or from necessity. *Gorman v. Railroad*, 26 Mo. 447; *Railroad v. McGrew*, 104 Mo. 297.

II. It is claimed furthermore that the instruction is erroneous in that it excludes defendant from a crossing over the railroad track from one part of his land to the other and thereby entitles him to increased damages by reason of not being able to use the two parcels of his land in connection with each other in the business to which they are adapted.

On this question the opinion of the court is expressed by BLACK, C. J., in a separate opinion, in which the instruction is held erroneous for the reason therein given. The writer agrees that the instruction should not have been given, but for the reason that defendant is believed to be entitled to such crossings as would be necessary for the convenient use of the two tracts in connection with each other, and if he refused

to accept them he should not be allowed to recover damages resulting from their absence.

III.   We think the evidence of sales of similar property to that in question, made in the neighborhood, about the same time, was admissible to aid the jury in determining the damage to which the owner was entitled.   The value of property is ascertained largely from such sales, and the opinions of witnesses as to values are largely predicated upon them.   It is best, when it can be done, to put the jurors in possession of all the facts from which values are ascertained, and allow them to draw the conclusion therefrom.   Witnesses basing their opinions upon recent sales, of like property, are liable to exaggerate or underestimate values; in any consideration they are no more capable of deducing fair conclusions from the known facts than the jury.   The object is to ascertain the general market value, and if particular sales are made under exceptional circumstances the fact can be shown, and the jury can determine its probative force.   Certainly no more reliable method of determining the fair market values of lands can be reached than that derived from *bona fide* sales of similar lands in the vicinity.   The objection that such evidence raises collateral issues, as to the character of the land sold, and the circumstances of such sales, is more than compensated for by its value in aiding the jury to a correct conclusion.   The weight of authority also supports this view.   Lewis on Eminent Domain, section 443; 6 Am. and Eng. Encyclopedia of Law, 619, and cases cited by each.

The case of *Springfield v. Schmook*, 68 Mo. 394, is not an authority against this position.   In that case evidence of what damages had been allowed other landowners was properly condemned.   As said by HOUGH, J., in that case:   "The assessment of damages in the other cases may have proceeded upon incorrect prin-

ciples, or the amount paid may have been the result of contract and in excess of the true value." Such evidence would introduce into the case collateral issues as to the theory upon which the damages were assessed, the benefits allowed, the manner in which the improvements affected the property and possibly others, and, after all, the assessment may have been the result of an arbitrary compromise of opinion by the jury or commissioners.

IV. Defendant was permitted to introduce evidence of an oral agreement between him and the Merchants' Bridge Terminal Railway Company, in consideration of a conveyance to said company of about ninety feet off the west end of his land east of and adjacent to Hall street, to the effect that said company would construct side tracks to connect its road with tracks that might be built on Clark's property. Objection was made to the competency of this evidence on the ground that such an easement as is contemplated by the agreement could only be created by grant and was within the statute of frauds.

Contracts within the statute of frauds are not void but only voidable at the election of the party to be charged. He may waive the necessity of the required by the statute and thereby make the binding. *Aultman v. Booth*, 95 Mo. 33); *Moore*, 90 Mo. 343.

It may also be said that as the stat affects only the remedy of the party sought to, its benefits can not be claimed by one who is to the contract and is not sought to be charged the Browne on the Statute of Frauds [4 Ed.], section *Davis v. Inscoe*, 84 N. C. 396; *Cooper v. Hornsby*, 71 Ala. 62; *Christy v. Brien*, 14 Pa. St. 248. I am of the opinion the court committed no error in admitting the evidence.

V.   It has been held in the appeal of defendant in this case that he was entitled to have the damages awarded by the commissioners, paid to him, or into court for him, before plaintiff had a right to the possession of the property.   Defendant was not, therefore, entitled to interest on the damages found by the jury. The money was paid to the clerk for him which was a sufficient compliance with the law.   It was subject to the order of the court (*Railroad v. Fowler*, 113 Mo. 458; *Railroad v. Clark*, 119 Mo. 357, and should have been paid to the defendants when demanded by them.

It appears from the judgment of the court that the money paid to the clerk for defendants has, by order of the court, been loaned part of the time.   Defendants being entitled to the money would be entitled also to what has been earned and added thereto by way of interest, but not to interest on the amount assessed by the jury.

VI.   Plaintiff assigns as error the giving of the following instruction:

"2.   The court instructs the jury that the construction of the Keokuk Railroad across Clark's land has deprived that portion of his land lying east of said railroad, of the right to connect by switches, with the Merchants' Bridge Terminal Railway Company, granted by ordinance number 14,078; and if this deprivation is an injury to said eastern portion, then said injury should be considered by you in estimating the damages in this case."

We think the instruction correct notwithstanding an ordinance of the city required and authorized said railway company to connect its tracks by switches with any warehouse, factory, store, lumber or coal yards or any commercial manufacturing establishment of any individual or corporation located adjacent to its railway.   It is manifest that such switches as are contem-

plated are for private and not public uses.   It was recently decided by this court that the  city under its general power to regulate the use of streets had not the power to legalize the construction and operation of railroads thereon for private purposes only.   *Glaessner v. Brewing Ass'n*, 100 Mo. 514.   Much less could it empower a railroad corporation to cross the track of another railroad for such purposes.   Private property can not be taken for such private uses without the consent of the owner.   Section 20, article 2, constitution of Missouri.

VII.   We see no objection to instruction 3  given for defendants, which is as follows:

"3. The court instructs the jury that, though you may believe from the evidence that it is and has been the custom of the Keokuk Railroad Company to make no charge for  hauling over switches onto their road, yet the court tells you that the road is not bound to continue this custom, but may at any time abandon it and make charges for hauling over  switches onto their road."   The law is properly declared in the instruction.

We find no error, except as to the ruling of the court as to the rights of the  parties in respect to crossings and as to  the instruction  authorizing interest on the amount of damages awarded.   Reversed and remanded.   BARCLAY, J., does not sit.   All the other judges concur in paragraphs 1, 3, 6 and 7.   All concur in paragraph 5, except SHERWOOD, J., who dissents.   All agree to what is said in paragraph 4; but BRACE, GANTT, and SHERWOOD, JJ., are of the opinion that the evidence offered refers to  matters too indefinite and remote to be considered in estimating damages.

### SEPARATE OPINION.

BLACK, C. J.—The property over which the plaintiff seeks to condemn  the right of way, is within the

corporate limits of the city of St. Louis. It has a river front of about one thousand feet and extends back west so as to include about thirty-eight acres. There is a public wharf to the north and to the south, constituting the only way of ingress and egress. The railroad cuts off about eight acres of the river front. The whole tract has been used for a saw mill and lumber yard, and the eight acres are a valuable adjunct to the other part for such and like purposes. The question of crossings over the railroad to and from the river front is therefore a vital and important question in this case in determining the amount of damages to be allowed.

On the trial of the case the plaintiff offered in evidence the following stipulation signed by its engineer:

"The plaintiff in the above entitled case, hereby declares and stipulates that its railroad through and over the land of the defendant, Wm. G. Clark, in the petition mentioned, and in this proceeding sought to be condemned, shall be constructed in the manner following, to wit: The center line of said railroad will be thirty-six feet (36 ft.) east of and parallel with the west line of the wharf as established by ordinance number 5403 of the city of St. Louis, Missouri; and that said company will construct, and maintain for the use of said defendant Clark, his heirs and assigns, across the tracks of its railroad within the land of said defendant Clark, two crossings, which shall be located at such places as said defendant shall select; and that said company will lay at each of said crossings, respectively, on each side of each rail of its tracks, securely spiked to the cross-ties, a plank of not less than ten inches (10 in.) in width and not less than two inches (2 in.) in thickness, and not less than twenty-four feet (24 ft.) in length, the same to be of good, sound timber; and will fill the spaces between

the inside planks with macadam or gravel, even with the top of the planks; and will make good and sufficient approaches to said crossings, respectively of equal width with said crossings, and of easy grade, and will cover said approaches with macadam or gravel to a depth of not less than six inches (6 in.), and will substantially and properly join said approaches up to the plank required to be laid outside of each rail.''

The defendant objected to the stipulation because incompetent and irrelevant, and the court sustained the objection. The case was then submitted to the jury on the theory that defendant was not entitled to have a crossing or crossings.

If the right of way is condemned on the petition as it stands with the proposed stipulation excluded, the company will have the right to fence the track on both sides. This follows from the construction given by this court to the fourth section of the damage act. *Radcliffe v. Railroad*, 90 Mo. 133. It is not important in this case to determine whether the defendant has the right to the necessary statutory farm crossings; for the law contemplates that such crossings may and will be closed, while the stipulation tenders two open crossings. It does not in words say open crossings, but they are to be made as road crossings are required to be made, and we understand it to mean two open crossings not less than twenty-four feet in length each. Such a crossing is a different thing from a statutory farm crossing. The question is then presented whether the company in condemning a right of way may reserve to the landowner, without his consent, one or more open crossings and have the damages assessed on the basis that the land owner has and retains such an easement.

The statute gives to a railroad company the

power to cause to be condemned for right of way a strip of land not exceeding one hundred feet in width. R. S. 1889, sec. 2543. And the company seeking to condemn must apply to the court or judge "by petition, setting forth the general directions in which it is desired to construct" the railroad "over such lands, a description of the real estate or other property which the company seeks to acquire," and the name of the owner or owners; and it is made the duty of the commissioners to give in their return "a specific description of the property for which such damages are assessed." R. S. 1889, secs. 2734, 2736. The statute does not in terms provide that the company may reserve to the landowner an easement.

The question to be decided has received full discussion by other courts. In *Tyler v. Hudson*, 147 Mass. 609, the town had the authority to take by purchase or otherwise the waters of a pond and all lands, rights of way and easements necessary for holding the water. The town in taking the land made a reservation in these words: "In this taking, the reservation is expressly made to the eight landholders above named, their heirs and assigns, for their cattle to come to said Gates' pond to drink, and to said owners, their heirs and assigns, to come to said pond to cut ice for domestic purposes, and to otherwise enjoy the use of said pond." The trial court allowed proof of damages, the same as if no reservation had been made; and of this ruling it was said: "The right to take the land by purchase or otherwise does not involve the obligation to take the whole interest in land purchased or otherwise taken. That a right of way could be reserved in land taken by purchase will not be questioned; the objection to reserving a right in the owner in land taken *in invitum* is technical, rather than substantial. It is true that, in a sense, it may be said to create a

new estate in him without his assent. A technical answer might be, that, the estate being for his benefit, his consent and acceptance simultaneous with the taking will be presumed. The real answer is that the refinements and nomenclature of conveyancing will not be applied to a taking by right of eminent domain. No more land and no greater interest in it need be taken than the public use requires. If the right to make a particular use of the land is of benefit to the owner, and puts no new burden upon him, and does not interfere with the public use for which the land is taken, there is no reason that he should be deprived of that use and be paid its value as damages; all the right to use the land, except that right may be taken, and that be left in him to enjoy or not as he pleases. If the right is of value, a valuable right in the land will remain in him, though he may refuse to exercise it. We are of opinion that the whole estate in the land was not taken, but that a right in it appurtenant to the whole land of which it was parcel was left in the owners. Whether that right diminished the damage to the adjoining land should have been left to the jury."

In *Oregon R'y & Nav. Co. v. Owsley*, 13 Pac. Rep. 186, the company appropriated a right of way under a statute like that of this state. The court after stating that it was not necessary to decide whether the corporation acquired the fee or an easement, uses the following language: "We see no reason why any corporation seeking appropriation of a right of way should not be entitled to the benefit of all the ingenuity and economy it may have at command in the planning and construction of its works, not only with reference to outlay for material and labor, but also with reference to compensatory damages to property owners along its right of way. If it sees fit to leave unappro-

priated so much of the landowner's interest as consists in an easement for irrigating ditches across the right of way, there is no rule of law of which we are aware to prevent it doing so. It surely can not be sound law that the corporation must take everything or nothing. Rather, it is bound to use its right of appropriation so as not to destroy or interfere with or debar any rights which may reasonably stand without prejudice to its own legitimate operations. The principle upon which it is allowed to become the agent of the common-wealth, to exercise the right of eminent domain, is not that it may as such agent do whatever it pleases, but rather that it may do whatever is reasonably necessary and convenient. Anything beyond this is not the taking of private property for public use, but the taking of it for private use. That same limitation which commonly attends the exercise of delegated power granted by a legislature in general terms, and which courts have often had occasion to recognize and apply in cases of municipal corporations, namely, that the exercise may be within the bounds of what, under all the circumstances, is fair and reasonable, we hold obtains in cases of the kind now before the court. This is the limit, on the one hand, of the liability of the land-owner to have his property taken, and on the other of the liability of the appropriating corporation to him for compensation." A like line of reasoning is pursued in a number of well considered cases. *Railroad v. Allen*, 22 Kansas, 285; *McGregor v. Gas Co.*, 21 Atl. Rep. 13.

As this property is within the corporate limits of St. Louis, the plaintiff will be bound to operate its trains under municipal regulations; and it may well be that two crossings can be reserved to the defendant without detriment to the plaintiff or the public service,

VOL. 121—13

and at the same time inflict less injury upon the defendant.

The company had the undoubted right to elect, as it did, to take a strip fifty, instead of one hundred, feet in width, and if it sees fit to reserve two open crossings for the defendant's use, we can see no reason why the reservation may not be made, and the damages then assessed on the basis that the defendant retains that interest in the land. The statute very justly and properly places restrictions upon the exercise of the right of eminent domain, but it does not follow by any correct reasoning that the condemning company is bound in all cases to go to the full extent of the law.

We are aware there are cases which seem to hold that to allow the company to reserve a right to the owner of the land, when he does not ask it, is to pay him for the land taken in something other than money; but it must be evident that such reasoning is not sound. The reservation of the easement being made, the damages are assessed in view of the interest thus retained and not condemned. The company pays for what it needs and takes, and the landowner is allowed all the damages which he in fact sustains.

Where the condemning company proposes to reserve to the landowner some right or easement not reserved by the statute itself, the reservation should be made in the original or by an amended petition. In other words the petition should set forth what the company proposes to take. The easement reserved to the landowner should be specifically defined and located, so that the rights of the parties may be then and thereafter protected. If the proposed reservation is not specifically stated and defined, the court can sustain a motion to make the petition more specific and definite in this respect.

In this case no objection was made to the stipula-

tion because not made a part of the petition.  Had such an objection been made, the substance of it would doubtless have been inserted by way of an amendment.

For the reasons stated we think the court erred in excluding the stipulation.  BRACE, GANTT, SHERWOOD and BURGESS, JJ., concur.  MACFARLANE, J., dissents.

### ON MOTION FOR REHEARING.

MACFARLANE, J.—I.  On motion for rehearing, filed by defendants, it is insisted that when the railroad company paid into court the amount of the damage awarded by the commissioners, and took possession of the land, the appropriation thereof was complete, the easement, as demanded in the petition, became vested absolutely in the corporation, and it had no right to require defendants to accept a release of a portion of such easement in lieu of money compensation to which they were entitled under the constitution.  It is insisted further that, after a complete appropriation, "any subsequent proceeding should only affect the amount of compensation to be allowed" the landowner, and the condemning company has no power to change the easement previously acquired.

We do not think that defendants observe the distinction between the appropriation of the land itself, and the plans and methods that may be adopted for the construction, maintenance and operation of the road thereon.  We think it true, as claimed, that the appropriation of the land is complete when the amount of damage awarded by the commissioners is paid and possession is taken.  This is necessarily implied from the provision of section 2739, that "any subsequent proceedings shall only affect the amount of compensation to be allowed."  Such has also been the construction placed upon the statute by this court.  *Gray v. Railroad,*

81 Mo. 126; *Railroad v. Carter*, 85 Mo. 448; *Railroad v. Town Site Co.* 103 Mo. 451; *Railroad v. Fowler*, 113 Mo. 458.

The damages to be assessed, and which are to be determined in subsequent proceedings, as stated by the statute, section 2734, "are in consequence of the establishment, erection and maintenance" of the railroad. It is manifest that the plans upon which the road may be constructed may greatly affect the damages to the land remaining unappropriated, and the uses to which it may be applied, without affecting, in the least, the appropriation. It could hardly be intended that, because commissioners assessed damages on the assumption that the road would be built on the natural grade of the land, on a subsequent trial the jury could not consider, on its estimate of damages, the fact that the corporation had changed its plans, and built its road on a high embankment or in a deep cut; so commissioners may assess damages on the theory that a farm crossing would be under the railroad, when it was afterwards, in fact, constructed across the track, or *vice versa;* there can be no doubt that the jury in such case should be allowed to assess the damages according to the plans upon which the road was actually built, though the use of the easement may thereby have been more or less limited.

If the assessment of damages by the commissioners concludes the proceedings, the corporation would have the right to use the land appropriated according to such plans as it may see fit to adopt (*Moss v. Railroad*, 85 Mo. 89), unless a particular manner of construction had been adopted upon which the commissioners made their estimate, in which case it seems but equitable, that if the original plans were changed, the landowner should be allowed additional compensation, if the change increased his damages.

Upon an assessment by a jury, in case the road has already been constructed, it seems too plain to require more than a statement of the proposition, that the damage should be ascertained in view of the condition in which the unappropriated land is left by the use actually made of the easement. This in no sense constitutes a payment of damages in privileges, but is simply a reduction, or increase, as the case may be, of the damages on account of the manner of constructing the road.

Now, we are unable to note a distinction between the supposed cases and the one under consideration. Neither is inconsistent with the previous complete appropriation of the land for the purpose of erecting, maintaining and operating a railroad thereon. Each affects only the damages to be allowed. No good reason can be seen why the condemning company should not have the right to announce, upon the trial, and have made a matter of record, if not done in its petition, the manner in which the right of way should be used, otherwise the jury would have the right to make the award on the basis of the most injurious use to which the easement could be lawfully applied in the construction and operation of the road.

The statutes of New Jersey do not differ materially from those in this state in respect to the proceedings to condemn land for railroad purposes. In a recent case the court of appeals expressed itself on the question under consideration as follows: "It is to be regretted, I think, that the law does not require the party condemning lands for public use to set out in the proceedings the mode in which the land condemned is to be used, so that it will become matter of record. The condemning party may designate the mode of use in its petition for the appointment of commissioners, and if it does the award should include damages predicated upon the use of the land in the designated mode. If

the mode is not designated in the petition or when called on before the commissioners or jury, then the award should include damages predicated upon the use of the land in any lawful mode for the purposes of the party. *National Docks & N. J. J. C. R'y Co., v. State*, 53 N. J. L. 217, 21 Atl. Rep. 570. And if, when called upon to declare before the commissioners or jury the mode in which the land is to be used, the party announces its plan, the award may be made on the basis of the most injurious use within such plan, and equity will restrain from a more injurious use. *Carpenter v. Railroad*, 24 N. J. Eq. 249. When a plan for the use of the condemned land is announced upon the trial of an appeal, the trial judge may properly require it to be entered upon the record by amendment of the issue or otherwise." *Packard v. Railroad*, 54 N. J. L. 563. See, also, *Railroad v. Railroad*, 112 Ill. 603.

In a recent case decided by the supreme court of Illinois the railroad company stipulated in open court to construct an underground crossing and to fence its road within a shorter time than the statute required. The landowner insisted that the corporation had no right to reduce the damage by such a stipulation. The supreme court says: "We think it is competent, upon the trial of a condemnation case, for the party seeking condemnation to bind itself, by an offer in open court, to the performance of duties like those here offered to be performed, and to thereby, and to the extent that such performance will prevent damages that would otherwise occur, abridge the claim by the landowner for damages. *Railroad v. Railroad*, 105 Ill. 383; *Hayes v. Railroad*, 54 Ill. 373. The judgment in such case should vest the rights obtained by the condemnation, subject to the performance of such duties, so as to insure it, and that was sufficiently done here." *Railroad v. Fletcher*, 128 Ill. 626.

In Pennsylvania a stipulation filed by a gas company in a proceeding to condemn a right to lay pipes through the land of another, releasing to the landowner the right to mine coal beneath the surface, was upheld, though it was objected that the release should have been offered at the time of filing the bond to secure the landowners damages. *McGregor v. Equitable Gas Co.*, 21 Atl. Rep. 13.

In the *McGrew case* (104 Mo. 282), relied upon by defendants, the offer, by the corporation, was to grant the landowner the right to locate his engine and machinery on land not involved in the condemnation proceeding at all. It was held, and we think properly, that damages could not be paid in that way. In that case both parties conceded the impracticability of working a mine located on one side of the road by machinery on the other side, by having connections pass over the surface of the track. Both parties introduced evidence, without objection, as to the practicability of underground and overhead connection. The right to the adoption of either of these methods was not denied. It is true, an instruction in that case was approved, which told the jury that the landowner had no right to make or maintain any connecting devices over the track which would in any manner interfere with the operation of the railroad or the safety of the traveling public. This proposition, under the peculiar circumstances in that case, we do not think in conflict with the opinion written by BLACK, C. J., in this case, but it is, we think, in entire harmony with it, as in that case no offer to reserve any such rights was made, nor were any such rights contemplated under any proposed plans of constructing the road.

The statutes of various states differ widely in respect to the proceedings in exercising the right of eminent domain, and the decisions of one state can not

safely be followed as precedents in another. The statute of our state is so incomplete that much must necessarily be left to be settled on general principles of equity and right. Our statute failing entirely to require the corporation to announce to the commissioners the plans upon which the road would be constructed, it would seem right that it should be permitted to do so upon a subsequent trial before a jury with a view of obtaining a reduction of damages.

Our opinion is, therefore, that the offer made by the railroad company in this case, upon the trial, to so construct its road as to reserve to the landowner two crossings, was a matter going to the damage to be allowed, though incidentally the reservation may have limited to a certain extent the use of the easement. Such an offer should be treated as in the nature of an amendment to the petition, entitling the defendants to a postponement of the trial if they were taken by surprise.

II. On reconsideration, a majority of the court has reached the conclusion that the evidence of an oral agreement by the Merchants' Bridge Terminal Railway Company (described in paragraph four of the opinion) to give an easement through its land, for the construction and maintenance of railroad tracks, and switches, for the use and benefit of defendant's land, should not now have been admitted. The object of the evidence was to show that defendant's land was permanently provided, by convenient connection with said railroad, with ample railroad privileges and facilities and was not dependent upon plaintiff's railway for them. It is thought that this evidence, depending as it does on merely possible future uses that may be made of defendant's land is too remote, uncertain and speculative to be a proper element of damage. The jury should properly take into consideration the situation of

the property with respect to the location of the Terminal Railway in determining the facilities it would afford, but not evidence of a contract that facilities would be given in the future which may never be needed or provided. Motion for rehearing overruled. BARCLAY, J., does not sit. The other judges concur. SHERWOOD, J., specially.