JACKSON COUNTY, Missouri,
Appellant,

v.

Norma Jean HALL, Respondent.

No. KCD 28490.

Missouri Court of Appeals,
Kansas City District.

Oct. 31, 1977.

Willard B. Bunch, County Counselor, Tom J. Helms, Sp. County Counselor, Kansas City, for appellant.

Robert L. Langdon, Lexington, for respondent; Bradley, Skelton & Schelp, Lexington, of counsel.

Before SWOFFORD, C. J., DIXON, J., and PRITCHARD, P. J.

PRITCHARD, Presiding Judge.

By an amended petition filed February 13, 1973, Jackson County sought to condemn approximately 85 acres of land owned by respondent for public use for a project known as the "Mouth of the Little Blue Park." The property lies to the southeast of the confluence of the Little Blue River and the Missouri River, northwesterly from Sibley in eastern Jackson County, Missouri.

The principal issue is whether the trial court abused its discretion in refusing to permit Jackson County further to amend its petition on the day of trial, September 29, 1975, to reserve to respondent an easement of ingress and egress 25 feet in width from the termination of Galvin Road on the north and then running along a road on top of an existing levee in a southeasterly direction, "limited to agricultural and farm machinery, farm vehicles and equipment,

and for no other use" to respondent's remaining 120 acres. The 120 acres was partially landlocked without the levee road for farm machinery use because of the insufficiency of two bridges over the railroad right-of-way on Patton Road which runs north along the southeastern side of the 120 acres.

Counsel for Jackson County first asked for a continuance, which was denied, stating to the court that this was the first time it had come to his attention that respondent was relying upon remainder damages because of the limitation of access to the remaining 120 acres. After the jury was selected, Jackson County offered this amendment:

"Paragraph 12.20 Plaintiff reserves and excepts to defendant, Norma Jean Hall, her heirs, grantees and assigns, an easement of ingress and egress twenty-five feet in width to defendant's remaining property beginning at the termination point of Galvin Road and running along the usual route thereof to the road located on top of the levee as it now exists, thence generally in a southeasterly direction to defendant's remaining land in the northeast quarter of the southwest quarter of Section 27, Township 51, Range 30, provided however, that defendant's use of the above described easement shall be limited to agricultural and farm machinery, farm vehicles and equipment, and for no other use.

"Paragraph 12.21 The aforesaid easement shall terminate if and when the two bridges located over the Atchison, Topeka and Santa Fe Railroad right-of-way on Patton Road are repaired, improved or replaced so as to accommodate wide and heavy loads. * * *."

At the time the amendment was offered, respondent objected upon the grounds that it was "unclear insofar as the legal description and the placing of this road, it's not clear as to where it begins, it's not clear as to where it runs, and it may be somewhat clearer as to where it ends, but I don't think a surveyor could go out there and survey this road. * * * [I]t's inviting a lawsuit somewhere down in the future regarding contingencies upon when these bridges may be able to accept certain types of machinery. It also is vague as to the type of machinery and the width of machinery that may be taken across there. * * * [F]or the reason that this does very little because it doesn't give us the right to maintain this easement, and we accept it in the same condition as Jackson County wants to leave it, which means it could mean no use whatsoever if it happens to be a muddy or a wet year." Further objection was lodged against the timeliness of the proposed amendment, that the jury had been picked, awaiting opening statements, that the case had been prepared by respondent based upon the existing pleadings, which had been on file since 1973.

Jackson County relies upon several cases which say that it is an abuse of discretion for a trial court to refuse an amendment to a petition in condemnation where the amendment seeks to take less or fewer rights from the condemnee. See the leading case of *St. Louis K. & N. W. Ry. Co. v. Clark*, 121 Mo. 169, 25 S.W. 192 (banc 1893), where by way of offered stipulation, the railroad would construct and maintain for the use of the landowner, his heirs and assigns, two crossings located as the landowner should select, each 24 feet wide, with planks securely spiked to crossties, spaces to be filled with macadam or gravel to a depth of not less than 6 inches. The court sustained an objection to the offered stipulation, and the case was tried on the theory that the landowner was not entitled to have a crossing or crossings. Held, the court erred in excluding the stipulation because: "[I]f it [the company] sees fit to reserve two open crossings for the defendant's use, we can see no reason why the reservation may not be made, and the damages then assessed on the basis that the defendant retains that interest in the land. The statute very justly and properly places restrictions upon the exercise of the right of eminent

domain, but it does not follow, by any correct reasoning, that the condemning company is bound, in all cases, to go to the full extent of the law. * * * The reservation of the easement being made, the damages are assessed in view of the interest thus retained and not condemned. The company pays for what it needs and takes, and the landowner is allowed all the damages which he in fact sustains." 25 S.W. 198 (Brackets added.) The facts of the *Clark* case, the offering of an easement to reduce the damage occasioned by the condemnation, are analogous to the facts here. See also *State ex rel. Highway Commission v. Wright*, 312 S.W.2d 70, 73–74[3] (Mo. 1958); *Union Electric Co. v. Levin*, 304 S.W.2d 478, 483 (Mo.App.1957); *State ex rel. Morton v. Allison*, 357 S.W.2d 733, 737[5] (Mo.App.1962) (transferred, see *State ex rel. Morton v. Allison*, 365 S.W.2d 563, 565[3, 4] (Mo. banc 1963); *State ex rel. State Highway Commission v. Stotko*, 365 S.W.2d 64, 67[3, 4] (Mo.App.1963), all following the *Clark* case, supra. See also 29A C.J.S. Eminent Domain § 265, p. 1124, et seq.

Concerning the proffered amendment, these facts are in evidence: As noted, counsel for Jackson County told the court on the day of trial that it was the first time he had knowledge of the fact that respondent was claiming damages to her remaining 120 acres by reason of loss of access over the levee road. James P. Fern, an appraiser for Jackson County, testified that he began his appraisal work on the land in question late in 1971, the date of its taking by condemnation being March 19, 1973. Mr. Fern had talked with respondent's husband, who died in an accident March 21, 1973. Mr. Fern did not take into account in his appraisal that access to the 120 acres would be cut off. He was assured that respondent would be given access—he was instructed by Jackson County in the preparation of his appraisal to assume that Mr. and Mrs. Hall or their heirs would be able to get in through the Galvin Road side. More specifically, Mr. Fern's notes recited, " 'The appraiser

has been instructed by the client to consider that an easement for access will be granted from Galvin Road extending along the top of the levee to the remainder tract to permit access for heavy machinery. This easement will continue until such a time as one of the two bridges across the railroad is improved to permit the easy movement of heavy equipment. Therefore, no severance damage to the remainder by virtue of the loss of access from Galvin Road has been considered.' "

By way of offer of proof upon objection to his proffered testimony, James Flanagan, who was a commissioner in the condemnation matter, testified that he met with Mr. and Mrs. Hall on December 12, 1972, at which time they told him of their problem in getting expensive machinery across the bridges after the taking. The commissioners were then advised by Jackson County that it would give a right for agricultural use only. The award, which was delayed because of litigation between the Halls and the Downses, was made March 19, 1973, and did assume that the Halls would have access to the (remaining) property for agricultural machinery from the Galvin Road gate onto the levee. Although counsel for Jackson County stated to the court that he was present at the meeting, it nowhere appears that he had knowledge of the easement matter, or that he was directed by Jackson County to amend its petition reserving the easement to respondent, at least until trial.

■ Of course, it was detrimental to respondent to be required to prepare her case on the basis of no easement of access being reserved to her, as based upon the petition as filed since 1973. For this reason, delay in amending a petition to condemn less than therein set forth is not to be encouraged. Nevertheless, the *Clark* case, supra, and others, hold that a petition may be amended to reduce the extent of taking at the trial, and that it is an abuse of discretion for the trial court to refuse the amendment. This court, being bound by the pronouncements

on the subject by the Missouri Supreme Court en banc case of *Clark*, supra, and others following it, has no alternative than to reverse and remand this case for new trial upon the amended petition, if again offered by Jackson County. Cases cited by respondent holding that whether an amendment should be permitted is largely within the discretion of the trial court, are distinguishable. *State ex rel. State Highway Commission v. Dunard*, 485 S.W.2d 657 (Mo. App.1972), held it was proper for the trial court to have permitted an amendment to provide for a future access to the remaining tract. *State ex rel. Morton v. Allison*, 365 S.W.2d 563 (Mo. banc 1963), had in it the issue of whether an abandonment of a first petition, and a refiling of the condemnation suit within 2 years (as prohibited by Rule 86.06) was done by reason of good faith mistakes, or for the purpose of harassment of the landowners, which facts the trial court was directed to ascertain.

■ The offered amendment, reserving an easement of access to respondent to her remaining 120 acres, is not vague and indefinite so as not adequately to apprise her of exactly what was being taken. The easement begins at the end of Galvin Road, a fixed, ascertainable point, thence runs atop the existing levee through the 85 acres condemned to the boundary of the remaining 120 acres. It is true that the proposed easement is to be terminated if and when the two bridges located on Patton Road are repaired, improved or replaced so as to accommodate wide and heavy loads. What is sought to be offered respondent by reservation to her is a determinable easement. "An easement may be created which will terminate, or which may be terminated, upon the happening of a particular event or contingency, or upon the occurrence, breach, or nonperformance of a condition, which limitation or condition will be enforced unless it is not sufficiently definite and certain or is contrary to a law or public policy." Anno.—Express Easement—Duration, 154 A.L.R. 5, 22[IV, a], and see also,

page 11[III]; and page 33(c) of the same annotation. Factors here which may be considered by the jury upon retrial are the determinable nature of the easement reserved to respondent (and her heirs and assigns); and the necessity of a possibility of a future factual determination of the adequacy of the bridges over the railroad on Patton Road to accommodate the size and type of farm machinery and equipment contemplated for use on the remaining 120 acres, upon any future issue of the termination of the easement over the levee road as reserved.

Other issues bear upon the sufficiency of the evidence of comparable sales in the vicinity of the land condemned. The parties have briefed those issues so they are adequately apprised to deal with them upon new trial. They therefore need not be discussed.

The judgment is reversed and the case is remanded for new trial.

All concur.