STATE of Missouri ex rel. STATE
HIGHWAY COMMISSION of
Missouri, Plaintiff-Appellant,

v.

JOE D. ESTHER, INC.,
Defendant-Respondent.

STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri, Plain-
tiff-Respondent,

v.

JOE D. ESTHER, INC.,
Defendant-Appellant.

Nos. 10672, 10679.

Missouri Court of Appeals,
Southern District,
En Banc.

Feb. 28, 1979.
Rehearing Denied March 19, 1979.

Bruce A. Ring, Chief Counsel, Jefferson
City, George M. Johnson, William T. Pow-
ers, Jr., Asst. Counsel, Springfield, for
plaintiff-appellant-respondent.

David Donnelly, Donnelly, Baldwin &.
Wilhite, Lebanon, for defendant-respon-
dent-appellant.

BILLINGS, Judge.

Condemnation proceeding by the State
Highway Commission and counterclaim by
defendant for a mandatory injunction. The

**156**

counterclaim was first tried by the court and relief denied. Trial by jury of the exceptions of the parties resulted in an award of $10,000 damages to defendant for the taking of an access and two drainage easements. Both parties appealed, defendant contending the court should have granted the requested injunctive relief and plaintiff claiming the court erred in denying a proposed amendment to its condemnation petition. We affirm as to the counterclaim and reverse and remand for a new trial on the issue of damages.

The condemnation petition was filed in 1972 in connection with the construction of Interstate Highway 44 in Laclede County. The petition sought to condemn the defendant's "rights of direct access to, from, and across Route I–44 or its right-of-way, from defendant['s] abutting land . . ." and two drainage easements on defendant's land.

Commissioners were appointed and their report fixed defendant's damages at $5,270. Both parties filed exceptions to the commissioners' report and thereafter defendant filed its counterclaim seeking to compel plaintiff to construct and maintain an outer roadway along the north side of its property.

At the bench trial of the counterclaim, the evidence was that Warren and Judy Dean were the former owners of lands which now lie both north and south of I–44. In 1955 old Highway 66 ran along the southern boundary of the Dean property and in that year plaintiff initiated proceedings to acquire right-of-way for a new two-lane highway which would be located north of the old highway and across the Deans' land. The new highway was to be used for westbound traffic on Route 66 and the old highway was to be used for eastbound traffic.[1]

In 1955 the Deans conveyed to plaintiff an easement for new Highway 66. The deed also conveyed the Deans' "abutters' rights of direct access between the highway, now known as U. S. Route 66, and

Grantors' abutting land . . .; except that there is reserved and excepted to grantors, their heirs and assigns, the usual right of direct access (1) to any adjacent outer-roadway if, and while it may be maintained by proper authority in front of said land, and (2) along it to and from the nearest lane of the thruway or public highway." The deed also contained the following: "This conveyance is made upon the condition and understanding that the State will construct and maintain such an adjacent outer-roadway fronting on Grantors' land from Station 1400 + 55 to Station 1406 + 85."

The evidence was undisputed that after the 1955 Dean deed the plaintiff did construct and maintain an outer roadway between the new highway and the northern portion of the Dean land. A thruway or cross-over was constructed at the west end of the outer roadway which crossed the highway and permitted an entrance to the southern portion of the Dean land.

Defendant purchased the south portion of what we have referred to as the Dean land from other grantors in 1967. At that time this tract of land was bounded by new Highway 66 on the north and old Highway 66 on the south. Bear Creek runs east and west through this tract of land and the upland portion, that lying between the creek and the new highway, was more suitable for defendant's cattle operation. Until this condemnation suit, defendant had access to the upland from new Highway 66 by way of the entrance at the south end of the thruway or cross-over. This suit sought to acquire this access, together with the two drainage easements.

It was defendant's theory, under its counterclaim, that the Dean deed required the plaintiff to construct and maintain an outer roadway between I–44 and the north boundary of defendant's land so that it could continue to have access to the upland from the north. In denying equitable relief and dismissing the counterclaim, the court,

---

1. The 1972 highway project was for the construction of a new two-lane highway which would carry eastbound traffic and run parallel to the 1955 construction.

inter alia, found and determined that plaintiff had constructed and maintained an outer roadway pursuant to the terms of the Dean deed; that defendant's rights as successor in title from the Deans were subject to eminent domain proceedings by plaintiff; and that defendant had an adequate remedy by way of damages.

■ We agree with the action taken by the trial court in dismissing defendant's counterclaim. In *State ex rel. State Highway Commission v. Hammel*, 372 S.W.2d 852 (Mo.1963), the trial court dismissed the landowner's counterclaim which sought specific performance of an alleged agreement by the commission to construct an overpass and streets necessary for ingress and egress to the landowner's property. In affirming the lower court's ruling, our Supreme Court said at 853–854: "In *Handlan-Buck Co. v. State Highway Commission*, Mo., 315 S.W.2d 219, appellant contended that it was the third-party beneficiary of a contract between the Highway Commission and the City of St. Louis under the provisions of which the commission agreed not to vacate and close Poplar Street at Third. This court there pointed out that *State ex rel. State Highway Commission v. James*, 356 Mo. 1161, 205 S.W.2d 534, had held that the commission 'had the authority to condemn or extinguish the right of an abutting owner to access to a state highway,' and that the constitutional provision authorizing the commission to do so 'where the public interest and safety may require is a grant of police power' and, consequently, the commission's authority to construct a limited access highway over Third Street and to close Poplar Street was within the state's police power and that if the closing of Poplar was in the public interest and for the safety of the public, the commission's authority to so act could not be limited, curtailed or destroyed by a contract it may have made with the city." The court held that to require the commission to construct a certain overpass and service roads at a particular location would "impinge upon" the commission's authority to limit access.

The *Hammel* case is decisive of defendant's appeal. Under the principles set forth therein the counterclaim failed to state a claim upon which relief could be granted and was properly dismissed.

■ During the course of the hearing on the counterclaim, plaintiff introduced in evidence the plans for the 1955 highway project and unsuccessfully attempted to elicit testimony from the designer of the 1972 highway project that he had made a mistake in the preparation of the 1972 plans; that the 1955 plans reflected a temporary entrance, not a permanent entrance, to the north side of the land owned by defendant; and, defendant did not have access rights. Defendant's objections to this line of testimony and offers of proof by plaintiff were sustained.

Prior to the trial of the parties' exceptions, plaintiff sought to amend its petition in condemnation by removing therefrom the allegation concerning defendant's access rights, averring that all rights of direct access and the rights to an entrance had been acquired by deed from the Deans in 1955. On the morning of trial the court overruled plaintiff's request to amend the petition and struck the proposed amendment. Plaintiff's motion for a continuance was denied. Plaintiff's offer of proof that the 1972 highway plan was in error, that the 1955 plan showed the entrance to be temporary, and that plaintiff had acquired the subject access by virtue of the 1955 Dean deed was, on defendant's objections, also denied. Trial proceeded.

Plaintiff's appeal presents the issue of whether or not it was entitled to amend its petition in condemnation, even on the day of trial, so as to take fewer rights and reduce the ultimate damages to the defendant. We are of the opinion that plaintiff should have been afforded the opportunity to show that it had made a mistake in seeking to condemn an access which it claimed it had already acquired. The Western District considered a similar question in *Jackson County v. Hall*, 558 S.W.2d 791 (Mo.App.1977), and in ruling the trial court erred in denying an amendment to a condemnation petition said at 793: " . . . [D]elay in amending a petition to condemn less than therein set forth is not to be

encouraged. Nevertheless, the *Clark* case [*St. Louis, K. & N. W. Ry. Co. v. Clark*, 121 Mo. 169, 25 S.W. 192 (banc 1893), *rev'd on other grounds*, 121 Mo. 169, 25 S.W. 906 (banc 1894)], supra, and others, hold that a petition may be amended to reduce the extent of taking at the trial, and that it is an abuse of discretion for the trial court to refuse the amendment."

If in fact plaintiff had acquired the access rights described in the petition by the Dean deed, a matter on which we presently voice no opinion because of the state of the record presented, then what was said in *State ex rel. State Highway Commission v. DeMarco*, 422 S.W.2d 644 (Mo.1968), at 649 is applicable: "The fact an error was made does not within itself justify the unjust enrichment of a party thought to be the owner of lands previously acquired by the state."

The trial court's denial of the proposed amendment calls for reversal and remand for new trial. *State ex rel. State Highway Commission v. Wright*, 312 S.W.2d 70 (Mo. 1958); *State ex rel. State Highway Commission v. Stotko*, 365 S.W.2d 64 (Mo.App. 1963); *Union Electric Co. v. Levin*, 304 S.W.2d 478 (Mo.App.1957).

It is so ordered.

All concur.